# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JAY ROBISON, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>                              Defendants. | Case No.    1:22-cv-550<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jay Robison ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Digital Turbine, Inc. ("Digital Turbine" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Digital Turbine; and (c) review of other publicly available information concerning Digital Turbine.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Digital Turbine securities between August 9, 2021 and May 17, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Digital Turbine is a software company that delivers products to assist third parties in monetizing through the utilization of mobile advertising. The Company completed the acquisitions of AdColony Holdings AS ("AdColony") and Fyber N.V. ("Fyber") on April 29 and May 25, 2021, respectively

3.      On May 17, 2022, Digital Turbine issued a press release revealing that it will "restate its financial statements for the interim periods ended June 30, 2021, September 30, 2021, and December 31, 2021, following a review of the presentation of revenue net of license fees and revenue share for the Company's recently acquired businesses."

4.      On this news, the Company's shares fell $1.93, or 7.1%, to close at $25.28 per share on May 18, 2022, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's recent acquisitions, AdColony and Fyber, act as agents in certain of their respective product lines; (2) that, as a result, revenues for those product lines must be reported net of license fees and revenue share, rather than on a gross basis; (3) that the Company's internal control over financial reporting as to revenue recognition was deficient; and (4) that, as a result of the foregoing, the Company's net revenues was overstated throughout fiscal 2022; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in

substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Jay Robison, as set forth in the accompanying certification, incorporated by reference herein, purchased Digital Turbine securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Digital Turbine is incorporated under the laws of the Delaware with its principal executive offices located in Austin, Texas. Digital Turbine's shares trade on the NASDAQ exchange under the symbol "APPS."

13.     Defendant William Stone ("Stone") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Barrett Garrison ("Garrison") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Stone and Garrison (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance

or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Digital Turbine is a software company that delivers products to assist third parties in monetizing through the utilization of mobile advertising.

### Materially False and Misleading Statements Issued During the Class Period

17.     The Class Period begins on August 9, 2021. On that day, Digital Turbine announced its first quarter 2022 financial results in a press release that stated, in relevant part[1]:

**Recent Financial Highlights:**

- ***Fiscal first quarter of 2022 revenue totaled $212.6 million***. On a pro forma basis, as if both Fyber and AdColony were owned for the full quarter, total consolidated pro forma revenue for the fiscal first quarter of 2022 was $292.0 million, representing a 104% increase year-over-year as compared to the comparable pro forma figure for the fiscal first quarter of 2021.

\*       \*       \*

**Fiscal 2022 First Quarter Financial Results**

Total revenue for the first quarter of fiscal 2022 was $212.6 million. Total "On-Device Media" revenue, which represents revenue derived from the Company's Application Media and Content Media platform products, increased 93% year-over-year to $120.3 million. ***Total "In-App Media" revenue, which represents revenue derived from the AdColony and Fyber businesses beginning on the dates when the acquisitions closed during the quarter, was $92.3 million.*** AdColony

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

contributed $44.9 million during the quarter, while Fyber contributed $49.6 million during the quarter.

18.     The same day, Digital Turbine filed its Form 10-Q with the SEC for the period ended June 30, 2021 (the "1Q22 10-Q"), affirming the previously reported financial results. The report further stated the following as to net revenues and license fees and revenue share, in relevant part:[2]

|  | Three months ended June 30, | |
| --- | --- | --- |
|  | 2021 | 2020 |
| Net revenues | $         212,615 | $ 59,012 |
| Costs of revenues and operating expenses |  |  |
| License fees and revenue share | 138,348 | 32,300 |
| Other direct costs of revenues | 2,533 | 560 |
| Product development | 15,547 | 4,408 |
| Sales and marketing | 13,736 | 4,318 |
| General and administrative | 23,296 | 6,804 |
| Restructuring and impairment costs | 10 | — |
| Total costs of revenues and operating expenses | 193,470 | 48,390 |
| Income from operations | 19,145 | 10,622 |

*          *          *

Net revenues increased by 264.3% ($155,949) over the comparative periods due to a combination of continuing organic growth of the Company's historical legacy business (On Device Media) and contributions from recent acquisitions.

*          *          *

Costs of revenues and operating expenses increased by 299.8% ($145,634) over the comparative periods, a result of continuing organic and inorganic growth, including the acquisitions of Appreciate, AdColony, and Fyber.

*          *          *

---

[2] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

License fees and revenue share increased by 328.3% ($106,048) over the comparative periods, attributable to the increase in net revenues over the same period as these costs are paid as a percentage of our revenues. License fees and revenue share increased at a greater rate over the comparative periods than the associated revenues to which they are tied due to our acquisitions having higher contractual revenue share percentages than the legacy business.

19.     Regarding Digital Turbine's revenue recognition policies, the 1Q22 10-Q stated: "[T]here have been no significant changes to the Company's revenue recognition policies, now inclusive of the acquisitions of AdColy and Fyber . . . ."

20.     Moreover, the 1Q22 10-Q stated: "Based on the evaluation of our disclosure controls and procedures as of the end of the period covered by this Report, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective."

21.     On November 2, 2021, Digital Turbine issued a press release announcing its second quarter 2022 financial results, stating in relevant part:

**Recent Financial Highlights:**

- Fiscal second quarter of 2022 revenue totaled $310.2 million, representing a 338% increase year-over-year on an as-reported basis and a 63% increase year-over-year as compared to the comparable pro forma figure for the fiscal second quarter of 2021.

                    *     *     *

Total revenue for the second quarter of fiscal 2022 was $310.2 million. Total "On-Device Media" revenue, which represents revenue derived from the Company's Application Media and Content Media platform products, increased 73% year-over-year to $129.4 million. Before intercompany eliminations, total "In-App Media" revenue, which represents revenue derived from the Fyber and AdColony businesses, increased 61% year-over-year on a pro forma basis to $187.2 million. Fyber contributed $125.7 million during the quarter, while AdColony contributed $61.5 million during the quarter.

22.     The same day, Digital Turbine filed a Form 10-Q with the SEC for the period ended September 30, 2021 (the "2Q22 10-Q"), affirming the previously reported financial results. The

report further stated the following as to net revenue and license fees and revenue share, in relevant part:

| | Three months ended September 30, | | Six months ended September 30, | |
|---|---|---|---|---|
| | **2021** | **2020** | **2021** | **2020** |
| Net revenues | $ 310,205 | $70,893 | $ 522,820 | $129,905 |
| Costs of revenues and operating expenses | | | | |
| License fees and revenue share | 213,145 | 40,532 | 351,493 | 72,832 |
| Other direct costs of revenues | 3,838 | 662 | 6,371 | 1,222 |
| Product development | 17,904 | 4,217 | 33,451 | 8,625 |
| Sales and marketing | 17,479 | 4,835 | 31,215 | 9,153 |
| General and administrative | 41,307 | 8,531 | 64,613 | 15,335 |
| Total costs of revenues and operating expenses | 293,673 | 58,777 | 487,143 | 107,167 |
| Income from operations | 16,532 | 12,116 | 35,677 | 22,738 |

\*      \*      \*

Over the three-month comparative periods, net revenues increased by 337.6% ($239,312), and over the six-month comparative periods, net revenues increased by 302.5% ($392,915). The changes are due to a combination of continuing organic growth of the Company's historical legacy business (now the On Device Media segment) and contributions from recent acquisitions.

\*      \*      \*

Over the three and six months ended September 30, 2021, total costs of revenues and operating expenses increased by $234,896 and $379,976, respectively, compared to the three and six months ended September 30, 2020. The increase in total costs of revenues was a result of continuing organic growth and the acquisitions of Appreciate, AdColony, and Fyber.

\*      \*      \*

License fees and revenue share increased by $172,613 to $213,145 in the three months ended September 30, 2021, and were 68.7% as a percentage of total net revenues compared to $40,532 or 57.2% of total net revenues in the three months ended September 30, 2020.

\*      \*      \*

The increase in license fees and revenue share was attributable to the increase in total net revenues over the same period as these costs are paid as a percentage of our revenues. The increase in license fees and revenue share as a percentage of total net revenues was primarily due to our recent acquisitions having higher license fees and revenue cost percentages, which is largely due to contractual revenue share percentages that are higher than the legacy business.

23.     Regarding Digital Turbine's revenue recognition policies, the 2Q22 10-Q stated: "[T]here have been no significant changes to the Company's revenue recognition policies, now inclusive of the acquisitions of AdColy and Fyber . . . ."

24.     Moreover, the 2Q22 10-Q stated: "Based on the evaluation of our disclosure controls and procedures as of the end of the period covered by this Report, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective."

25.     On February 8, 2022, Digital Turbine issued a press release announcing its third quarter 2022 financial results, stating in relevant part:

**Recent Financial Highlights:**

- Fiscal third quarter of 2022 revenue totaled $375.5 million, representing a 324% increase year-over-year on an as-reported basis and a 38% increase year-over-year as compared to the comparable pro forma figure for the fiscal third quarter of 2021.

\*      \*      \*

Total revenue for the third quarter of fiscal 2022 was $375.5 million. Total "On-Device Media" revenue, which represents revenue derived from the Company's Application Media and Content Media platform products before intercompany eliminations, increased 43% year-over-year to $133.6 million. Before intercompany eliminations, total revenue from our two "In-App Media" segments, which represents revenue derived from the Fyber and AdColony businesses, increased 40% year-over-year on a pro forma basis to $251.7 million. Fyber contributed $157.4 million during the quarter, while AdColony contributed $94.3 million during the quarter.

26.     The same day, Digital Turbine filed its Form 10-Q with the SEC for the period ended December 31, 2021 (the "3Q22 10-Q"), affirming the previously reported financial resutls. It further stated, regarding net revenues and license fees and revenue share:

| | Three months ended December 31, | | Nine months ended December 31, | |
| --- | --- | --- | --- | --- |
| | 2021 | 2020 | 2021 | 2020 |
| Net revenue | $        375,487 | $88,592 | $        898,307 | $218,497 |
| Costs of revenue and operating expenses | | | | |
| License fees and revenue share | 267,722 | 50,144 | 619,215 | 122,976 |
| Other direct costs of revenue | 5,125 | 749 | 11,496 | 1,971 |
| Product development | 17,720 | 5,202 | 51,171 | 13,827 |
| Sales and marketing | 15,857 | 5,219 | 47,072 | 14,372 |
| General and administrative | 39,924 | 6,761 | 104,537 | 22,096 |
| Total costs of revenue and operating expenses | 346,348 | 68,075 | 833,491 | 175,242 |
| Income from operations | 29,139 | 20,517 | 64,816 | 43,255 |

*     *     *

Over the three-month comparative periods, net revenues increased by 323.8% ($286,894), and over the nine-month comparative periods, net revenues increased by 311.1% ($679,809). The changes are due to a combination of continuing organic growth of the Company's historical legacy business (now the On Device Media segment) and contributions from recent acquisitions.

*     *     *

License fees and revenue share increased by $217,578 to $267,722 in the three months ended December 31, 2021, and was 71.3% as a percentage of total net revenue compared to $50,144, or 56.6% of total net revenue, for the three months ended December 31, 2020.

*     *     *

The increase in license fees and revenue share was attributable to the increase in total net revenue over the same period as these costs are paid as a percentage of our revenue. The increase in license fees and revenue share as a percentage of total net

revenue was primarily due to our recent acquisitions having higher license fees and contractual revenue cost percentages compared to the legacy business.

27.     Regarding Digital Turbine's revenue recognition policies, the 3Q22 10-Q stated: "[T]here have been no significant changes to the Company's revenue recognition policies, now inclusive of the acquisitions of AdColy and Fyber . . . ."

28.     Moreover, the 3Q22 10-Q stated: "Based on the evaluation of our disclosure controls and procedures as of the end of the period covered by this Report, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective."

29.     The above statements identified in ¶¶ 17-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's recent acquisitions, AdColony and Fyber, act as agents in certain of their respective product lines; (2) that, as a result, revenues for those product lines must be reported net of license fees and revenue share, rather than on a gross basis; (3) that the Company's internal control over financial reporting as to revenue recognition was deficient; and (4) that, as a result of the foregoing, the Company's net revenues was overstated throughout fiscal 2022; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

30.     On May 17, 2022, after the market closed, Digital Turbine disclosed that it would restate its financial statements for the periods ended June 30, 2021, September 30, 2021, and December 31, 2021. Specifically the press release stated:

> The revenue for certain product lines of the recently acquired businesses, which are separate reportable segments, will now be reported net of license fees and revenue

share, rather than on a gross basis, as had been previously reported. The changes have the offsetting effect of decreasing both revenue and license fees and revenue share in a like amount, while simultaneously increasing reported gross profit margin and Non-GAAP Adjusted EBITDA margin, in the interim financial statements for each relevant period.

31.     On May 17, 2022, Digital Turbine filed a Form 8-K revealing preliminary estimates of the extent of the restatement. Specifically, the Company  stated:

> In connection with the integration of the Company's recently acquired businesses (AdColony Holding AS and Fyber N.V. (the "Acquired Companies")), management performed a review of the presentation of revenues and license fees and revenue share based on the accounting guidance for revenue recognition, including considerations of principal and agent (or "gross and net") presentation. After a detailed review of the Acquired Companies product lines and related contracts with customers and publishers, the Company concluded that each Acquired Company acts as an agent in certain of their respective product lines and, as a result, the revenues for those product lines should be reported net of license fees and revenue share. Previously, all revenues of the Acquired Companies, which are reported as separate segments referred to as In App Media – AdColony and In App Media – Fyber, respectively, were reported on a gross basis.
>
> Previously, the Company's revenues were reported as approximately $212.6 million for the three-month period ended June 30, 2021, $310.2 million for the three-month period ended September 30, 2021, and $375.5 million for the three-month period ended December 31, 2021. Based on its preliminary assessment, the Company expects that revenue on a net basis will be reported as approximately $158.1 million for the three-month period ended June 30, 2021, $188.6 million for the three-month period ended September 30, 2021, and $216.8 million for the three-month period ended December 31, 2021.

32.     The same Form 8-K further stated that "the Company's disclosure controls and procedures were not effective at June 30, 2021, September 30, 2021, and December 31, 2021."

33.     On this news, the Company's shares fell $1.93, or 7.1%, to close at $25.28 per share on May 18, 2022, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Digital Turbine securities between August 9, 2021 and May 17, 2022,

inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Digital Turbine's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Digital Turbine shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Digital Turbine or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Digital Turbine; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

39.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.      The market for Digital Turbine's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Digital Turbine's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Digital Turbine's securities relying upon the integrity of the market price of the Company's securities and market information relating to Digital Turbine, and have been damaged thereby.

41.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Digital Turbine's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Digital Turbine's business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Digital Turbine's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Digital Turbine's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Digital Turbine, their control over, and/or receipt and/or modification of Digital Turbine's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Digital Turbine, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Digital Turbine's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Digital Turbine's securities traded at artificially inflated prices during the Class Period. On November 1, 2021, the Company's share price closed at a Class Period high of $91.40 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Digital Turbine's securities and market information relating to Digital Turbine, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Digital Turbine's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Digital Turbine's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Digital Turbine and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of

the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Digital Turbine's securities was an efficient market for the following reasons, among others:

(a)     Digital Turbine shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Digital Turbine filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Digital Turbine regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Digital Turbine was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Digital Turbine's securities promptly digested current information regarding Digital Turbine from all publicly available sources and reflected such information in Digital Turbine's share price. Under these circumstances, all purchasers of Digital Turbine's securities during the Class Period suffered similar injury through

their purchase of Digital Turbine's securities at artificially inflated prices and a presumption of reliance applies.

50.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading,

and/or the forward-looking statement was authorized or approved by an executive officer of Digital Turbine who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Digital Turbine's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Digital Turbine's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Digital Turbine's financial well-being and prospects, as specified herein.

56.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Digital Turbine's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Digital Turbine and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Digital Turbine's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Digital Turbine's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Digital Turbine's securities during the Class Period at artificially high prices and were damaged thereby.

60.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Digital Turbine was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Digital Turbine securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of Digital Turbine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, Digital Turbine and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 6, 2022                     Respectfully submitted,

By:  ___/s/ Sammy Ford IV_____

**AHMAD, ZAVITSANOS & MENSING P.C.**
Sammy Ford IV
State Bar No. 24061331
Jordan Warshauer
State Bar No. 24086613
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 665-1101
Facsimile: (713) 665-0062
Email: sford@azalaw.com
         jwarshauer@azalaw.com

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Jay Robison*