UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAY ROBISON, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>               Defendants. | Case No.  1:22-cv-00550-RP<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MELISSA KIRSHNER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |
| MELISSA KIRSHNER, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>               Defendants. | Case No.  1:22-cv-00731-RP |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 5

      I.      KIRSHNER SHOULD BE APPOINTED LEAD PLAINTIFF ............................ 5

           A.      Kirshner Has the "Largest Financial Interest" in the Related Actions ....... 6

           B.      Kirshner Otherwise Satisfies the Requirements of Rule 23 ...................... 10

CONCLUSION ................................................................................................................... 11

CERTIFICATE OF SERVICE .......................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ...................................................................................5, 10

*Brody v. Zix Corp.*,
No. 04-CV-1931-K, 2005 WL 8158375 (N.D. Tex. July 11, 2005)...............................5, 8, 10

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ...............................................................................2, 7

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
Nos. 17 CV 1677, 1958, 2017 U.S. Dist. LEXIS 199868
(N.D. Ohio Dec. 4, 2017)...........................................................................................8

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................ *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
2008) .........................................................................................................................8

*Espinoza v. Whiting*,
2013 U.S. Dist. LEXIS 6227 (E.D. Mo. Jan. 16, 2013)...........................................3, 7

*Foster v. Maxwell Techs., Inc.*,
Nos. 13-cv-00580-BEN-RBB ...................................................................................8

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ......................................................................2, 7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878
(E.D.N.Y. Mar. 2, 2007) ...........................................................................................3, 7

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006).......................................................................8, 9

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)...............................................................................2, 7

ii

*In re LightInTheBox Holding Co., Sec. Litig.*,
2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013)....................................................3, 7

*James v. City of Dallas, Tex.*,
254 F.3d 551 (5th Cir. 2001) .................................................................................................5, 10

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016).........................................................................................8

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)......................... *passim*

*Marcus v. J.C. Penney Co., Inc.*,
2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ......................................................................2, 7

*Marjanian v. Allied Nevada Gold Corp.*,
No. 2:14-CV-0650-JCM-VCF, 2015 WL 128691 (D. Nev. Jan. 9, 2015) ...................... *passim*

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .................................................................................................5, 10

*Pio v. GM Co.*,
No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) .........................5, 8

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21,
2007) ......................................................................................................................................8, 9

*Schueneman v. Arena Pharm., Inc.*,
No. 10cv1959 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2002)..................................3, 7

*TDH Partners LLP v. Ryland Grp., Inc.*,
No. 04-CV-0397, 2006 WL 8437050 (N.D. Tex. June 2, 2006) ........................................4, 8, 10

*Tran v. XBiotech Inc.*,
No. A-15-CA-01083-SS, 2016 U.S. Dist. LEXIS 22279 (W.D. Tex. Feb. 23,
2016) .....................................................................................................................................6, 10

**Statutes**

15 U.S.C. § 78u-4(a)(3) ...........................................................................................................1, 6, 10

15 U.S.C. § 78u-4(b)(4) ....................................................................................................................1

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................................1, 5, 6, 10

Movant Kirshner[1] respectfully submits this Memorandum of Law in further support of her motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of her selection of Pomerantz as Lead Counsel and BLF as Liaison Counsel (Dkt. No. 13); and in opposition to the competing motions of: (i) Howard J. Burch ("Burch") (Dkt. No. 20); and (ii) United Wire Metal and Machine Pension Fund, Local 810 Affiliated Pension Fund, and City of Pontiac Reestablished General Employees Retirement System (the "Institutional Investor Group") (Dkt. No. 18).[2]

### PRELIMINARY STATEMENT

The Related Actions are putative class action securities fraud lawsuits on behalf of investors in Digital Turbine securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; ***and*** who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, 15 U.S.C. §78u-4(b)(4) provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter ***caused the loss*** for which the plaintiff seeks to recover damages."

Here, that movant is Kirshner, who clearly possesses the largest financial interest as assessed under the so-called *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *7-8 (N.D. Ill.

---

[1] All capitalized terms herein are defined in Kirshner's moving brief, unless otherwise indicated. *See* Dkt. No. 14.

[2] Initially two other movants also filed competing motions: (i) Jonathan Plante ("Plante") (Dkt. No. 12) and (ii) James Lowry ("Lowry") (Dkt. No. 17). Plante subsequently filed a notice of non-opposition, acknowledging that he did not appear to have alleged the largest financial interest in this litigation within the meaning of the PSRLA (Dkt. No. 23), and Lowry subsequently filed a notice of withdrawal of his motion. *See* Dkt. No. 24.

Aug. 6, 1997), and widely adopted by courts nationwide as guidance for the PSLRA lead plaintiff process.  *See, e.g., Buettgen v. Harless,* 263 F.R.D. 378, 380 (N.D. Tex. 2009); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002).  The four *Lax* factors guiding the lead plaintiff selection process are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (*i.e.*, the total number of purchased shares minus the number of those shares sold before the alleged corrective disclosure or event); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *Lax*, 1997 U.S. Dist. LEXIS 11866, at *7-*8.

With respect to the fourth *Lax* factor, approximate loss suffered, courts generally utilize the loss calculation methodology articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which stated that any assessment of losses for claims arising under Section 10(b) of the Exchange Act must take into account only ***recoverable*** losses—*i.e.*, losses actually traceable to the alleged fraud and its disclosure.  *See*, *e.g.*, *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911 at *3 (E.D. Tex. Feb. 28, 2014) (considering the *Dura* method when analyzing movant's financial interest); *Marjanian v. Allied Nevada Gold Corp*., No. 2:14-CV-0650-JCM-VCF, 2015 WL 128691, at *3 (D. Nev. Jan. 9, 2015) ("To determine which plaintiff has the largest financial stake, courts consider the 'recoverable damages' of each party pursuant to *Dura Pharmaceuticals*").  When considering only "recoverable damages" under *Dura*, courts disregard losses suffered for shares purchased and sold prior to an alleged corrective disclosure, as those losses could not have been damaged by the alleged fraud.  *Dura*, 544 U.S. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  Courts have applied *Dura* when evaluating lead plaintiff movants' financial interests because "it makes sense to disregard any gains or losses resulting from stock

trades before the truth was disclosed." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *1 (S.D. Cal. Aug. 8, 2011); *see also Espinoza v. Whiting*, 2013 U.S. Dist. LEXIS 6227, at *11 (E.D. Mo. Jan. 16, 2013) (determining greatest financial interest using the *Dura* approach); *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842, at *10 (S.D.N.Y. Nov. 21, 2013) (applying the *Dura* methodology to calculate greatest financial interest); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) ("[T]he logical outgrowth of [the *Dura*] holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff).

In its order appointing a lead plaintiff in *Allied Nevada*, the court articulated the step-by-step methodology for the proper calculation of losses pursuant to *Dura*. To calculate a movant's losses, the Court considers (1) the depreciated value of the shares retained by the movant, and (2) losses realized on the sale of shares that occurred after the corrective disclosure(s) at issue. *Allied Nevada*, 2015 WL 128691 at *8-*9. Here, two corrective disclosures are at issue. Following the first corrective disclosure, Digital Turbine's share price fell from $27.21 on May 17, 2022 to close at $25.28 per share on May 18, 2022. Following the second corrective disclosure, Digital Turbine's share price fell from $25.43 to on May 31, 2022 to close at $19.68 on June 1, 2022. To determine losses, the Court multiplies the number of shares retained by the movant at the time of each disclosure by the difference between (i) the closing price on the last trading day prior to the disclosure and (ii) the higher of the closing price following the corrective disclosure, the actual sales price for the movant's post-disclosure sales of the movant's Digital Turbine securities, and the average closing price of Digital Turbine stock for the 90 days following the corrective disclosure. By this methodology, Kirshner suffered $127,054 in losses in connection with her

purchases of Digital Turbine securities, having retained nearly 14,400 shares of Digital Turbine stock at the end of the Class Period. Although one competing movant, Burch, alleges a loss of $700,614, calculated on a last-in, first-out ("LIFO") basis, this figure does *not* represent Burch's recoverable loss, and thus does *not* reflect his financial interest in this litigation within the meaning of the PSLRA. Indeed, under the principles articulated in *Dura* and *Allied Nevada*, only *$113,802* of Burch's losses are in face traceable to the fraud alleged in the Related Actions. Accordingly, Burch's recoverable loss is nearly *$587,000* lower than his alleged LIFO loss and over *$13,250* lower than Kirshner's recoverable loss. The following table compares the financial interests of the competing movants when applying the calculation utilized in *Allied Nevada*:

| Movant | Shares Purchased | Funds Expended | Net Shares Purchased (Retained Shares) | Loss | |
|---|---|---|---|---|---|
| | | | | *Dura* | LIFO |
| Kirshner | 14,360 | $958,220 | 14,360 | $127,054 | $694,538 |
| Burch | 12,583 | $929,196 | 12,583 | $113,802 | $700,614 |
| Institutional Investor Group | 13,527 | $810,792 | 12,518 | $16,653 | $459,375 |

As the table reflects, Kirshner possesses the largest financial interest in this litigation under a *Lax*-factor analysis, having purchased more shares, expended more on her purchases, retained more shares at the end of the Class Period, and suffered a larger recoverable loss under *Dura* than any other movant. Even if the Court were to decline to assess losses under *Dura* principles at this stage of the litigation, then Kirshner's loss calculated on a simple LIFO basis is $694,538, or roughly equivalent to the $700,614 loss incurred by Burch, the only investor claiming a larger loss on that basis. Given that a difference of merely 0.87% separates Burch's losses from Kirshner's, an appropriately holistic analysis that also takes into account the other three *Lax* factors—across *all* of which Kirshner leads the field of movants—plainly favors Kirshner's appointment. *See, e.g.*, *TDH Partners LLP v. Ryland Grp., Inc.*, No. 04-CV-0397, 2006 WL 8437050, at *8 (N.D.

4

Tex. June 2, 2006) (considering *Lax* factors "as a whole" before appointing lead plaintiff); *Brody v. Zix Corp.*, No. 04-CV-1931-K, 2005 WL 8158375, at *2 (N.D. Tex. July 11, 2005) (appointing lead plaintiff after "looking at all four factors"); *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses.").

In addition to her significant financial interest, Kirshner also satisfies the adequacy and typicality requirements of Rule 23.  Kirshner is aware of no conflict between her interests and those of the Class, her losses incurred give her a sufficient stake in the outcome of this action to ensure vigorous advocacy, and in Pomerantz and BLF, Kirshner has retained qualified and experienced counsel.  *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999).  Kirshner, like all members of the Class, purchased Digital Turbine securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon disclosure of those misrepresentations or omissions.  *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).

For the reasons set forth herein, Kirshner respectfully requests that the Court grant her motion in its entirety and deny the competing motions.

## ARGUMENT

### I.     KIRSHNER SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has either filed the complaint or made a [timely] motion" for appointment, "has the

largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The applicant that has the largest financial interest need only make a *prima facie* showing that they satisfy the requirements of Rule 23.  *Tran v. XBiotech Inc.*, No. A-15-CA-01083-SS, 2016 U.S. Dist. LEXIS 22279, at *5 (W.D. Tex. Feb. 23, 2016).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.   15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Kirshner.

## A.      Kirshner Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The PSLRA does not prescribe a particular method of calculating the size of a movant's financial interest in the relief sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("[T]he court may select accounting methods that are both rational and consistently applied.").  However, in any action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's fraud.  *Dura*, 544 U.S. at 338.  Under *Dura*, any recoverable losses must stem from a cognizable cause.  *See id*. at 342.  As a result, a lead plaintiff movant cannot calculate his, her or its "financial interest in the relief sought" by simply pointing to the amount by which the stock was artificially inflated when the shares were purchased.  *Dura*, 544 U.S. at 340.  Instead, a lead plaintiff movant's loss must be calculated based on the amount of the decline, if any, in the stock's price caused by the correction of prior misleading public information.  *See id*. at 342, 347.   Here, the only allegations of losses in these Actions were when the corrective disclosures caused the share price to decline on May 17, 2022, after the Company announced that it would restate its financial statements for certain interim

6

periods following a review of the presentation of revenue net of license fees and revenue share for the Company's recently acquired businesses (*Robison* Action, Dkt. No. 1, at ¶ 3; *Kirshner* Action, Dkt. No. 1, at ¶ 4), and on May 31, 2022, after the Company issued a press release revealing a weak revenue forecast and an earnings per share figure for Q4 fiscal year 2022 that missed consensus estimates (*Kirshner* Action, Dkt. No. 1, at ¶ 6).  By the terms of the complaints on file then, an investor would not have any recoverable losses for shares that she sold prior to that information damaging Digital Turbine's share price.  There is no other theory of damages alleged in these Actions and as such, only losses attributable to the stock price declines on those corrective disclosure dates should be considered when evaluating a movant's financial interest.

Accordingly, courts in the Fifth Circuit generally and the federal courts of Texas specifically assess the financial interest of lead plaintiff movants by examining the *Lax* factors (*see*, *e.g.*, *Buettgen,* 263 F.R.D. at 380; *In re BP*, 758 F. Supp. 2d at 433; *In re Enron*, 206 F.R.D. at 440), and in assessing the fourth *Lax* factor, approximate loss suffered, courts frequently calculate losses under the methodology articulated in *Dura*, 544 U.S. 336.  *See*, *e.g.*, *J.C. Penney*, 2014 WL 11394911 at *3 (considering the *Dura* method when analyzing movant's financial interest).  Courts have applied *Dura* when evaluating financial interests because "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman*, 2011 U.S. Dist. LEXIS 87373 at *1; *see also Allied Nevada*, 2015 WL 128691 at *3 ("To determine which plaintiff has the largest financial stake, courts consider the 'recoverable damages' of each party pursuant to *Dura Pharmaceuticals*"); *Espinoza*, 2013 U.S. Dist. LEXIS 6227 at *11 (determining greatest financial interest using the *Dura* approach); *In re LightInTheBox*, 2013 U.S. Dist. LEXIS 165842, at *10 (applying the *Dura* methodology to calculate greatest financial interest); *see also In re Comverse*, 2007 U.S. Dist. LEXIS 14878 at *22

7

(same).  Indeed, seventeen years after *Dura*, it is by now axiomatic that if "the purchaser sells the shares . . . ***before*** the relevant truth beings to leak out, ***the misrepresentation will not have led to any loss***." *Dura*, 544 U.S. at 342 (emphases added); *see also Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated ***with respect to shares retained as of the date of the corrective disclosure***") (emphasis added); *Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580-BEN-RBB *et al.*, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss ***if the purchaser sells the shares before the truth is revealed***.") (emphasis added).

Finally, the *Lax* factors are to be examined holistically.  *See, e.g.*, *TDH Partners*, 2006 WL 8437050 at *8 (considering *Lax* factors "as a whole" before appointing lead plaintiff); *Brody*, 2005 WL 8158375 at *2 (appointing lead plaintiff after "looking at all four factors"); *Pio*, 2014 U.S. Dist. LEXIS 151205, at *11 ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, Nos. 17 CV 1677, 1958,, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio Dec. 4, 2017); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006).

As the chart at p. 4 illustrates, a holistic *Lax*-factor analysis clearly favors Kirshner's appointment as Lead Plaintiff.  Under any analysis, it cannot be disputed that Kirshner purchased more Digital Turbine shares (14,360), expended more on her purchases ($958,220), and retained more shares at the end of the Class Period (14,360) than any other movant.  With respect to the fourth factor, monetary loss, Kirshner has incurred a larger ***recoverable*** loss in this litigation than any other movant, calculated pursuant to the loss-causation principles articulated by the Supreme Court in *Dura* and the step-by-step methodology utilized in *Allied Nevada*: $127,054, a loss over $13,250 larger than that incurred by Burch, the movant with the next-largest loss under *Dura*.  Applying *Dura* principles, then, Kirshner leads the other competing movants across all four *Lax* factors.  Even if the Court were disinclined to adopt the *Allied Nevada* court's precise loss calculation in toto, any loss calculation that adopts the loss causation principles articulated by *Dura* would result in Kirshner alleging the largest losses, as she indisputably held the most shares (14,360) at the time of the alleged corrective disclosures.

Even if the Court were to decline to apply *Dura* principles at this stage and assess the competing movants' losses on a simple LIFO basis, Kirshner's loss of $694,538 is roughly equivalent to the $700,614 loss claimed by Burch, with a difference of only ***0.87%*** separating these two movants.  *See*, *e.g.*, *SafeNet*, 2007 U.S. Dist. LEXIS 97959 at *6 (finding a $40,000 difference between movants' losses to be "very slight", not "outcome determinative" and could not "dictate such an important result" as appointment of lead plaintiff, and "treat[ing] these losses as roughly equal"); *Doral Fin. Corp.*, 414 F. Supp. at 403 (finding movants' losses that differed by 17% to be "roughly equal").  With Burch and Kirshner functionally tied with respect to the fourth *Lax* factor and Kirshner leading Burch in the remaining three *Lax* factors, Kirshner plainly has the largest financial interest under a holistic analysis that takes into account all four *Lax* factors.  *See*,

*e.g.*, *TDH Partners LLP* 2006 WL 8437050, at *8 (considering *Lax* factors "as a whole" before appointing lead plaintiff); *Brody*, 2005 WL 8158375, at *2 (appointing lead plaintiff after "looking at all four factors").

Under any relevant analysis, then, Kirchner possesses the largest financial interest in this litigation within the meaning of the PSLRA.

### B.   Kirshner Otherwise Satisfies the Requirements of Rule 23

Kirshner has also made the requisite *prima facie* showing that she satisfies the typicality and adequacy requirements of Rule 23.   *Tran*, 2016 U.S. Dist. LEXIS 22279, at *5.   First, Kirshner's claims satisfy the typicality requirement of Rule 23(a)(3) because her claims against the Defendants "have the same essential characteristics of those of the putative class."   *City of Dallas, Tex.*, 254 F.3d at 571.   Second, Kirshner satisfies the adequacy requirement of Rule 23(a)(4) because her submissions strongly demonstrate the "zeal and competence of [her] counsel and the willingness and ability of [Kirshner] to take an active role in and control the litigation and to protect the interests of absentees."   *Berger*, 257 F.3d at 479; *see also Mullen*, 186 F.3d at 625-26.

\* \* \* \* \*

Because Kirshner has the largest financial interest of any eligible Lead Plaintiff applicant in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, she is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Kirshner to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).   No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

10

**CONCLUSION**

For the foregoing reasons, Kirshner respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Kirshner as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel and BLF as Liaison Counsel for the Class.

Dated:  August 19, 2022

Respectfully submitted,

/s/ *Willie C. Briscoe*
WILLIE C. BRISCOE
State Bar Number 24001788
THE BRISCOE LAW FIRM, PLLC
12700 Park Central Drive, Suite 520
Dallas, TX 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

*Counsel for Melissa Kirshner and*
*Proposed Liaison Counsel for the Class*

POMERANTZ LLP
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Melissa Kirshner and*
*Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(admitted *pro hac vice*)
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

11

12

*Additional Counsel for Melissa Kirshner*

## CERTIFICATE OF SERVICE

This is to certify that on August 19, 2022, I have caused to be filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

/s/ Willie C. Briscoe
WILLIE C. BRISCOE

13