UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JAY ROBISON, Individually and on Behalf of<br>All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    vs.<br><br>DIGITAL TURBINE, INC., et al.,<br><br>              Defendants. | Civil Action No. 1:22-cv-00550-RP |
| MELISSA KIRSHNER, Individually and on<br>Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    vs.<br><br>DIGITAL TURBINE, INC., et al.,<br><br>              Defendants. | Civil Action No. 1:22-cv-00731-RP |

**THE PENSION FUNDS AND RETIREMENT SYSTEM'S REPLY IN FURTHER
SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL**

## I.    INTRODUCTION

Of the remaining three lead plaintiff applicants the Pension Funds and Retirement System is

the *only* movant that has a substantial financial interest in the relief sought by the class *and* satisfies

the typicality and adequacy requirements of Rule 23 at this stage.[1]  *See* 15 U.S.C. §78u-

4(a)(3)(B)(iii)(I).  Indeed, no other movant opposed the Pension Funds and Retirement System's

motion for any reason other than the fact that they do not claim the largest loss.  *See* ECF 25, 27 (no

---

[1]    In addition to the Pension Funds and Retirement System, the remaining movants are Howard J.
Burch and Melissa Kirshner.  All emphasis is added and citations are omitted unless otherwise noted.

substantive arguments against the Pension Funds and Retirement System).  By contrast, neither Mr.

Burch nor Ms. Kirshner satisfy the requirements for appointment.  *See* ECF 26 at 2-8.  As such, the

Pension Funds and Retirement System's motion should be granted.

Unnecessarily complicating matters, Ms. Kirshner's opposition brief improperly seeks to

interject a new financial interest metric – a so-called "*Dura* loss" method – that, not coincidentally,

purports to show that Ms. Kirshner's "*Dura* loss" is higher than the loss suffered by either Mr. Burch

or the Pension Funds and Retirement System.  *See* ECF 27 at 4.  There are a host of problems with

Ms. Kirshner's new method, including that:

- LIFO is the preferred method to assess financial interest in cases like this, which is supported by the fact that every movant, ***including Ms. Kirshner***, quantified their financial interest in their motion by referencing their LIFO loss (*see* ECF 14 at 8; ECF 18 at 5; ECF 20 at 7);[2]

- Lead plaintiff movants cannot move the goalposts mid-briefing (like Ms. Kirshner attempts to do here) by switching financial interest metrics after realizing she does not prevail on her initially-asserted LIFO method;[3]

- It is improper to use a loss calculation method that entirely disregards purchase price (as Ms. Kirshner invites this Court to do);[4] and

- It is improper to use a so-called "Recoverable Loss" methodology in cases like this involving multiple disclosures of defendants' alleged wrongdoing.[5]

In sum, there is no basis in procedure, law, or fact to adopt Ms. Kirshner's new method to

---

[2]    *See, e.g.*, *Strong v. AthroCare Corp.*, 2008 WL 11334942, at *6 (W.D. Tex. Dec. 10, 2008) (the "majority view seems to be that approximate losses should be calculated using the LIFO method").

[3]    *See, e.g.*, *Cook v. Allergn PLC*, 2019 WL 1510894, at *2-*3 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted.").

[4]    *See, e.g.*, *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018) (methodology that "effectively precludes any consideration of purchase price" "will not be utilized by the Court").

[5]    *See, e.g.*, *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020) ("we reject at this phase the application of *Dura* to loss calculation when the complaint alleges multiple partial disclosures").

assess the movants' financial interests.  Thus, while Mr. Burch and Ms. Kirshner both claim to have suffered larger LIFO losses than the Pension Funds and Retirement System, because neither Mr. Burch nor Ms. Kirshner satisfy the Rule 23 requirements (and cannot trigger the presumption), their motions should be denied.  *See* ECF 26 at 1-8.

The Pension Funds and Retirement System are entitled to the PSLRA's presumption and no movant even attempted to rebut that presumption.  Their motion should be granted.

## II.    ARGUMENT

### A.    The Pension Funds and Retirement System Are the "Most Adequate Plaintiff"

None of the other movants challenged the Pension Funds and Retirement System's ability to serve as lead plaintiff.  *See* ECF 25, 27.  Other than pointing out their relatively lower financial stake in the litigation, the other movants' oppositions contain no mention of the Pension Funds and Retirement System at all.  *Id.*; *see Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (finding argument that fund's "smaller financial interest is sufficient to rebut the presumption that it should be appointed lead plaintiff" "unpersuasive" and appointing movant with the smallest loss as lead plaintiff).  As the *Marcus* court recognized, however, "financial interest factor is not the stopping point in the presumptive lead plaintiff analysis.  The proposed lead plaintiff must also meet the typicality and adequacy requirements of Rule 23."  *Id.*  Here, as in *Marcus*, the competing movants have not identified any reason, aside from the Pension Funds and Retirement System's smaller LIFO loss, that would prevent them from serving as lead plaintiff.  *See* ECF 25, 27; 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption rebuttable only upon "proof").[6]

This is not surprising as the Pension Funds and Retirement System are the type of

---

[6]    Neither Mr. Burch nor Ms. Kirshner should be permitted to belatedly raise any arguments in opposition to the Pension Funds and Retirement System's motion in their reply briefs.  *See Puga v. Travelers Ins.*, 58 F.3d 635, 635 (5th Cir. 1995) (finding plaintiff waived argument because she did not argue issue in her brief in opposition to defendants' motion).

institutional investor Congress intended to encourage to "come forward to manage the litigation and supervise the class action lawyers." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002); *Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 281 (N.D. Tex. 2001) (Congress intended institutional investors "to step forward to lead securities class actions."). Indeed, the Pension Funds and Retirement System are "accustomed to acting in the role of a fiduciary, and [their] experience with investing and financial matters will only benefit the class." *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546, 546 (N.D. Tex. 1997). As such, "[a]ppointing the Pension Funds [and Retirement System] as lead plaintiff has the added benefit of furthering the PSLRA's clear preference for institutional investors to serve as lead plaintiff." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 720 (S.D. Tex. 2021) (rejecting the appointment of movant claiming $2.7 million loss and appointing institution with $782,000 loss instead); *see also Bremer v. Solarwinds Corp.*, 2021 WL 2668827, at *2 (W.D. Tex. Mar. 11, 2021) (Pitman, J.) (noting that a "'large, sophisticated institutional investor'" with "'substantial financial stake in the litigation'" has already taken "'significant steps to protect the interests'" of all class members).

The Pension Funds and Retirement System are the only movant that meets all of the PSLRA's requirements. Their motion should be granted.

**B.    Neither Mr. Burch Nor Ms. Kirshner Have Triggered the Lead Plaintiff Presumption Because Neither has Met the Rule 23 Showing**

As previously noted, the movants' financial interests in each Class Period are as follows:

| MOVANT | *ROBISON* LOSS (08/09/21-05/17/22) | *KIRSHNER* LOSS (02/26/21—05/31/22) |
|---|---|---|
| **Pension Funds and Retirement System** | **$407,214** | **$529,986** |
| Howard J. Burch | $0 | $699,764 |
| Melissa Kirshner | $114,565 | $693,152 |

*See* ECF 26 at 4. Despite claiming a larger financial interest in the *Kirshner* Class Period only, neither Mr. Burch nor Ms. Kirshner has demonstrated their adequacy. *See* ECF 26 at 2-8. As such, their motions should be denied.

**C.      Ms. Kirshner's Attempt to Change the Financial Interest Analysis
Mid-Game Should Be Rejected**

Recognizing that she lacks the largest financial interest in either the *Robison* or *Kirshner*

Class Periods, Ms. Kirshner seeks to alter the rules of the game so she can be elevated to the front of

the pack.  The Court should decline to permit her transparent maneuver.

**1.      LIFO Is the Preferred Methodology to Assess Financial
Interest in Cases Like This**

As the Court in *Strong* duly recognized, the "majority view seems to be that approximate

losses should be calculated using the LIFO method."  2008 WL 11334942, at *6; *Hall v. Rent-A-

Center, Inc.*, 2017 WL 1017716, at *2 (E.D. Tex. Mar. 16, 2017) (finding LIFO methodology

"widely-accepted"); *Marcus*, 2014 WL 11394911, at *4 ("districts prefer determining the

approximate loss suffered by a potential lead plaintiff using the LIFO Method" because LIFO "takes

into account gains that might have accrued by the potential lead plaintiff during the class period due

to the inflation of the stock's price"); *Plymouth Cnty.*, 566 F. Supp. 3d at 717 (same); *Bo Young Cha*

*v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the

overwhelming trend both in this district and nationwide has been to use LIFO to calculate such

losses") (collecting cases).  Out of decades of case law concerning PSLRA lead plaintiff

appointments and calculating financial interest, Ms. Kirshner was unable to cite ***any law*** from this

District supporting the use of the so-called "*Dura* loss" method instead of LIFO, let alone a decision

upholding a movant's post-motion switch from initially advocating for LIFO to the "*Dura* loss"

method in an opposition brief.  ECF 27 at 2-3.  In fact, the one Texas case Ms. Kirshner did cite –

*Marcus* – is inaccurately cited.  *Id.* at 2.  Ms. Kirshner contends that the court in *Marcus*

"consider[ed] the *Dura* method when analyzing movant's financial interest."  *Id.* at 7.  But *Marcus*

merely recited the fact that a ***movant*** claimed to have used that method.  *See* 2014 WL 11394911, at

*3 ("Movant J.C. Penney Investor Group . . . stated it lost $605,270, and that the proper method to

calculate the largest financial interest is the *Dura* Method."). **The Marcus court did not use the Dura method at all**. *Id.* at \*4 (using four-factor analysis and considering LIFO loss).[7]

Ms. Kirshner has not cited any reason or persuasive case from within this Circuit for why this Court should forge a new path by abandoning LIFO when assessing the movants' financial interest.

### 2. Courts Reject Attempts to Move the Goalposts After Seeing Competing Movants' Losses

Even if the Court was inclined to consider Ms. Kirshner's attempt to abandon LIFO mid-briefing, the PSLRA "is unequivocal and imposes precise time requirements," and lead plaintiff movants cannot "'manipulate the size of their financial loss,'" and any "'supplementation [of loss calculations] after the expiration of the sixty (60) day [PSLRA motion] period would not only be inconsistent with the language and purposes of the PSLRA but would effectively nullify the time limits expressly provided therein.'" *Enron*, 206 F.R.D. at 439-40. This is why "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at \*4 (S.D.N.Y. Feb. 4, 2021) (collecting cases). "Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs." *Id.*; *Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at \*6 (E.D.N.Y. Apr. 26, 2022) (finding movant's "argument to be opportunistic (and unpersuasive), given that he apparently initially used a loss calculation methodology similar to Van's, and only advanced the new calculation method . . . after the relevant deadline had passed, upon learning that Van had sustained the larger loss"). "'This fact alone counsels in favor of adopting the LIFO methodology'" all movants used in their motions. *Marquez*,

---

[7]   Despite representing the movant with the smallest loss in *Marcus*, the Pension Funds and Retirement System's proposed lead counsel here (Robbins Geller Rudman & Dowd LLP) secured its client's appointment in *Marcus* and ultimately recovered $97.5 million for investors as lead counsel.

2021 WL 1314812, at *6.[8]

Ms. Kirshner attempts to deploy that tactic here upon facing a clear (but undesired) outcome under the LIFO method she initially urged in her motion. She now asks the Court to focus on a so-called "*Dura* loss" method which, ironically, ***reduces her own loss by over $560,000***. *Compare* ECF 14 at 8 (asserting she "incurred losses of approximately $694,538) *with* ECF 27 at 3-4 (asserting a $127,054 *Dura* loss). As such, the Court should be skeptical of Ms. Kirshner's new methodology. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2, *4 (N.D. Cal. Aug. 22, 2008) (expressing concern as to "why a plaintiff would argue for" a position that "would have the effect of ***reducing*** the class size and limiting the potential amount of damages, ***unless it was in the best interest of that particular plaintiff only***" and instead using method that "maximizes" potential losses).

> **3.** **Courts Across the Country – Including Ms. Kirshner's Own Authority – Reject Loss Calculation Methods That Ignore the Purchase Price of Shares Bought During the Class Period**

Ms. Kirshner argues that net shares purchased should be determinative of financial interest here according to a so-called *Dura* loss calculation which multiplies the movants' net shares held on a disclosure date by the amount the stock dropped after the corrective disclosure. *See* ECF 27 at 3 (citing *Marjanian v. Allied Nevada Gold Corp.*, 2015 WL 128691, at *3 (D. Nev. Jan. 9, 2015)). Among many problems Ms. Kirshner faces is the fact that *Marjanian* did ***not*** ignore the purchase

---

[8]   *Cook*, 2019 WL 1510894, at *3; *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660, at *6 (S.D. Ohio June 19, 2020) (declining to allow movant to "abandon[]" method used in its motion and stating that courts have "expressed disproval for vacillating advocacy such as this, especially as it pertains to calculating losses for appointment as lead plaintiff"); *Hirtenstein v. Cempra, Inc.*, 2017 WL 2874588, at *3 n.4 (M.D.N.C. July 5, 2017) (rejecting movant's "request to 'change[] [its] method of valuation upon realizing [its] defeat' under normal valuation methods"); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology," and "[t]his fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology.").

price in making its calculation as Ms. Kirshner suggests. *Compare id. with Marjanian*, 2015 WL 128691, at \*7 ("accept[ing]" as "accurate" and "based on the PSLRA" calculations taking into account "'the actual purchase price for the calculation of approximate losses'"). Just as *Marjanian* used the purchase price in assessing the movants' financial interest, courts across the country **reject** attempts to ignore the purchase price when estimating recoverable losses. *See Simco*, 2018 WL 11226076, at \*2-\*3 ("Silverback's methodology" which "effectively precludes any consideration of purchase price" "will not be utilized by the Court, and financial interest is determined by the traditional LIFO method that URS and all the other movants relied on in their motions.").

In *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265 (S.D.N.Y. 2015), the court held that a so-called *Dura* loss calculation "which renders purchase price irrelevant – is inconsistent with the statutory scheme and with *Dura* itself." *Id.* at 276-77 (rejecting contention that *Dura* stands for the proposition "that purchase price plays no role in loss analysis"). In the end, the court found that "[t]he adoption of a standard in which purchase price never plays a part in determining loss would work a radical change in the law," and held that the movant with the largest loss was "the presumptive lead plaintiff." *Id*.

Ms. Kirshner's authorities do not hold otherwise. *See* ECF 27 at 3. In fact, all her authorities hold is that a movant must have loss causation (an element of the claim), not that the purchase price should be ignored or an accounting method other than LIFO should be used, the latter of which are what Ms. Kirshner advocates. *See Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at \*4 (S.D. Cal. Aug. 8, 2011) (calculating movants' recoverable losses by reference to "purchase price"); *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at \*3 (S.D.N.Y. Nov. 21, 2013), *recons. denied by* 2014 WL 129043 (S.D.N.Y. Jan. 14, 2014) (finding that "[i]n excluding such [non-recoverable] losses from measuring the 'largest financial interest' under the PSLRA, courts generally apply one of two accounting techniques: 'first-in, first out' ('FIFO') and 'last-in,

first-out' ('LIFO')"); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar.

2, 2007), *adhered to on recons. by* 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) (same).  The lone

exception is *Espinoza v. Whiting*, 2013 U.S. Dist. LEXIS 6227, at *11 (E.D. Mo. Jan. 16, 2013)

which "has never been cited or relied on by another court."  *Sallustro*, 93 F. Supp. 3d at 276

("*Espinoza* contains little analysis, however, and – despite Chesner's case citation indicating that

*Espinoza* 'collect[s] cases' in which this loss model has allegedly been utilized . . . – in reality,

*Espinoza* cites no supporting cases.").  In sum, Ms. Kirshner conflates the concept of loss causation

(which is an element of the claim that the *Dura* decision addressed) with the accounting methods

courts use to assess financial interest.  Simply stated, to have a "*Dura* loss" or a "recoverable loss"

simply means that a movant did not sell out of its position entirely ***before*** an alleged disclosure –

nothing more, nothing less.  None of the movants here sold out of their positions before an alleged

disclosure, so the entire discussion of *Dura* is inapposite.  Accordingly, this Court should utilize the

loss method all movants advocated in their moving papers: LIFO.

### 4. Courts Reject the "*Dura* Loss" Methodology When the Underlying Case Involves Multiple Disclosures as in This Case

Ms. Kirshner's "*Dura* Loss" methodology (also known as the "retained shares method")

urges the Court to only consider the shares held immediately before an alleged disclosure and

multiply those shares held by the amount of the alleged stock decline.  *See* ECF 27 at 3.  Whatever

possible (and questionable) merit there might be in using such a method in a case involving a single,

end-of-class-period disclosure, ***this*** is not such a case.  Ms. Kirshner concedes that this case involves

leakage of defendants' wrongdoing over a period of time, including on May 18, 2022 and June 1,

2022.  *Id*.  And, in cases like this involving multiple alleged disclosures where the "fraud premium

fluctuates, neither the gross nor the net number of shares purchased is a good indicator of financial

loss, since the loss depends on how large the fraud premium was at the time of the purchase."  *In re*

*Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *11 (W.D. Wash. July 13, 2005); *In re*

*Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (the retained shares method "gets into trouble . . . if the amount of the 'fraud premium' varied" during the class period).

Stated simply, a varying fraud premium – which all movants acknowledge exists here – further militates against shifting to the use of a retained share method. *See Di Scala*, 2020 WL 7698321, at *3 ("we reject at this phase the application of *Dura* to loss calculation when the complaint alleges multiple partial disclosures"); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) (where, as here, the "complaint alleges multiple partial disclosures over the course of the Class Period," courts have been "reluctant" to apply such an approach at the lead plaintiff stage); *In re CMED Sec. Litig.*, 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) ("The Court is not aware of any case in this Circuit – and the Bachmann Group has not cited any – that has calculated losses" pursuant to "the 'Dura LIFO loss[]'" approach "for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures.").

There are no facts or law supporting Ms. Kirshner's abandonment of LIFO in favor of an accounting method that disregards the purchase price to assess the movants' financial interest under the PSLRA.  Consequently, the Court should decline to adopt her belatedly-introduced method.

## III.    CONCLUSION

The movants unanimously agree that the Pension Funds and Retirement System have satisfied the Rule 23 requirements at this stage.  And, while other movants have larger financial interests than the Pension Funds and Retirement System, ***none*** meet the Rule 23 requirements at this stage.  The Pension Funds and Retirement System's motion should be granted.

DATED:  August 26, 2022                          Respectfully submitted,

                                                                KENDALL LAW GROUP, PLLC
                                                                JOE KENDALL (Texas Bar No. 11260700)

                                                           *s/ Joe Kendall*
                                                                 JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
cbdunn@asherkellylaw.com

Additional Counsel for Proposed Lead Plaintiff

## CERTIFICATE OF SERVICE

I caused the filing of the foregoing document and attached exhibits through the Court's CM/ECF system on August 26, 2022, which will serve all counsel of record.

*s/ Joe Kendall*
JOE KENDALL

4871-4709-2015