UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAY ROBISON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>Defendants. | Case No.  1:22-cv-00550-RP<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MELISSA KIRSHNER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |
| MELISSA KIRSHNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>Defendants. | Case No.  1:22-cv-00731-RP |

Movant Kirshner[1] respectfully submits this Reply Memorandum of Law in further support of her motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of her selection of counsel (Dkt. No. 13); and in opposition to the competing motions (Dkt. Nos. 18, 20).

**PRELIMINARY STATEMENT**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can ***only*** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See, e.g.*, *Mullins v. AZZ, Inc.*, 2018 U.S. Dist. LEXIS 222090, at *6 (N.D. Tex. Aug. 9, 2018).

Here, the presumptive most adequate plaintiff—*i.e.*, the presumptive Lead Plaintiff—is Kirshner. First, Kirshner has alleged the largest financial interest in this litigation under any relevant analysis. There is no dispute that Kirshner purchased more Digital Turbine shares, expended more funds on those purchases, and retained more shares during the Class Period than any other movant. Kirshner also has the largest loss, as properly calculated pursuant to the loss calculation methodology articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Calculated on a non-*Dura* LIFO basis, Kirshner's losses are roughly equivalent to those of Burch, whose losses exceed Kirshner's by a mere 0.87%. Kirshner thus plainly possesses the largest financial interest under an appropriately holistic analysis that takes

---

[1] All capitalized terms herein are defined in Kirshner's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 14, 27.

into account all four *Lax* factors. *See, e.g.*, *TDH Partners LLP v. Ryland Grp., Inc.*, 2006 U.S. Dist. LEXIS 36084, at *30-*31 (N.D. Tex. June 2, 2006) (considering *Lax* factors "as a whole" before appointing lead plaintiff); *Brody v. Zix Corp.*, 2005 U.S. Dist. LEXIS 13871, at *5 (N.D. Tex. July 11, 2005) (appointing lead plaintiff after "looking at all four factors"); *Pio v. GM Co.*, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses.").

One competing movant, the Institutional Investor Group, urges the Court to assess financial interest with respect to the shorter Class Period alleged in the action *Robison v. Digital Turbine, Inc.*, 1:22-cv-00550-RP ("*Robison*") (August 9, 2021 – May 17, 2022) in lieu of the longer and more inclusive Class Period alleged in the action *Kirshner v. Digital Turbine, Inc.*, 1:22-cv-00731-RP ("*Kirshner*") (February 26, 2021 – May 31, 2022). Yet at the lead plaintiff appointment stage of PSLRA actions, where different class periods are alleged among related actions that are the subject of consolidation motions, courts generally adopt the longest and most inclusive of the possible class periods for the purposes of assessing financial interest and appointing a lead plaintiff. *See, e.g.*, *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009). Here, given that the *Kirshner* Complaint alleges a colorable theory of fraud beginning on February 26, 2021, the Court should endorse the longer and more inclusive *Kirshner* Class Period in making its financial interest determination, rather than risk excluding potential class members early in this litigation.

Second, Kirshner has demonstrated her typicality and adequacy within the meaning of Rule 23. Kirshner, like all members of the Class, purchased Digital Turbine securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. With respect to adequacy, Kirshner's significant losses give her a sufficient stake in this litigation's outcome to ensure vigorous prosecution; Kirshner is aware of no conflict between her interests and those of the putative Class; and in Pomerantz, Kirshner has retained qualified and experienced class counsel. *Id.* Kirshner has further demonstrated her adequacy by the submission of a Declaration herewith, attesting to, *inter alia*, her understanding of the responsibilities of a Lead Plaintiff, her decision to seek appointment as Lead Plaintiff, and the steps that she is prepared to take to prosecute this litigation on behalf of the Class. *See* Reply Declaration of Willie C. Briscoe ("Briscoe Reply Decl."), Ex. A.

The Institutional Investor Group attacks Kirshner's adequacy and typicality. First, the group claims that Kirshner has failed to demonstrate her adequacy because she did not provide sufficient information about herself in her motion papers. *See* Dkt. No. 26 at 2. Second, the group notes "that all but one of Ms. Kirshner's purchases [of Digital Turbine stock] were at an exactly even dollar value" and speculates that this must reflect errors in Kirshner's Certification, undisclosed options transactions, or some atypical trading strategy. Dkt. No. 26 at 2.

The Institutional Investor Group's attacks lack merit. The PSLRA contains no requirement that a movant provide detailed background information. Rather, the statute requires only the submission of a Certification, which Kirshner has duly provided. *See* Dkt. No. 15-3. Nonetheless, Kirshner submits herewith a detailed Declaration containing the type of biographical information

3

that the Institutional Investor Group has demanded. Nor is there anything problematic about Kirshner's purchases of Digital Turbine stock at whole-dollar prices. There is no dispute that these prices are within the trading ranges for the dates in question, and Kirshner has submitted a signed Certification attesting to these purchases under the penalty of perjury. There is thus no reason to question the accuracy of her transaction history or to assume it reflects any undisclosed trading that would render her an atypical Class member.

## ARGUMENT

### I. Kirshner Possesses the Largest Financial Interest Under the Most Inclusive Class Period

As discussed in detail in Kirshner's opposition brief, Kirshner has alleged the largest financial interest in this litigation assessed holistically with reference to all four *Lax* factors—irrespective of whether the Court evaluates the movants' losses pursuant to a *Dura*-derived methodology (as Kirshner respectfully submits is appropriate) or on a non-*Dura* LIFO basis—and with reference to the longest and most inclusive Class Period alleged in *Kirshner* (February 26, 2021 – May 31, 2022). *See* Dkt. No. 27 at 6-10.

| Movant | Shares Purchased | Funds Expended | Net Shares Purchased (Retained Shares) | Loss | |
|---|---|---|---|---|---|
| | | | | *Dura* | LIFO |
| Kirshner | 14,360 | $958,220 | 14,360 | $127,054 | $694,538 |
| Burch | 12,583 | $929,196 | 12,583 | $113,802 | $700,614 |
| Institutional Investor Group | 13,527 | $810,792 | 12,518 | $16,653 | $459,375 |

As the foregoing table illustrates, Kirshner purchased more Digital Turbine shares, spent more on her purchases, and retained more shares when the Defendants' fraud was revealed than any other movant. Kirshner also incurred a larger ***recoverable*** loss than any other movant calculated pursuant to the loss-causation principles articulated in *Dura*, which are appropriately applied at the Lead Plaintiff appointment stage in PSLRA actions. *See*, *e.g.*, *Marcus v. J.C. Penney Co., Inc.*,

2014 U.S. Dist. LEXIS 197529 at *12-*13 (E.D. Tex. Feb. 28, 2014) (considering the *Dura* method when analyzing movant's financial interest); *Marjanian v. Allied Nevada Gold Corp.*, 2015 U.S. Dist. LEXIS 2782, at *13 (D. Nev. Jan. 9, 2015) ("To determine which plaintiff has the largest financial stake, courts consider the 'recoverable damages' of each party pursuant to *Dura Pharmaceuticals*"). Even assuming *arguendo* that the Court were to assess loss on a non-*Dura* LIFO basis, Kirshner and competing movant Burch are effectively tied for the largest loss, with only 0.87% separating the two movants' losses. A holistic analysis taking into account all four *Lax* factors thus clearly favors Kirshner. By contrast, finding that Burch has the largest financial interest requires the Court to assess financial interest with reference **only** to LIFO loss, thereby disregarding both three of the four *Lax* factors **and** 17 years of PSLRA jurisprudence since *Dura*.

Conceding that it lacks the largest financial interest under the foregoing analysis, the Institutional Investor Group argues in its opposition brief that the Court should disregard the more inclusive *Kirshner* Class Period and assess financial interest instead with reference to the shorter *Robison* Class Period (August 9, 2021 – May 17, 2022)—in which the Institutional Investor Group's alleged financial interest exceeds Kirshner's. *See* Dkt. No. 26 at 4-6.

As a threshold matter, Kirshner notes that the Institutional Investor Group **itself** calculated its losses with reference to the longer *Kirshner* Class Period in its initial motion papers. *See* Dkt. No. 19-4 (financial interest analysis referencing "Class Period: 02/26/2021 – 05/31/2022"). Nor did the Institutional Investor Group otherwise question the propriety of the *Kirshner* Class Period anywhere in its initial motion papers. Rather, the Institutional Investor Group only changed tack and began advocating for the *Robison* Class Period in its opposition papers—*i.e.*, only after it became apparent that *Robison* was the only Class Period in which the group could claim to have

5

the largest financial interest.  Kirshner respectfully submits that the Institutional Investor Group's abrupt volte face significantly undercuts the credibility of its argument.

Even crediting its sincerity, the Institutional Investor Group is wrong.  At the Lead Plaintiff appointment stage of PSLRA actions, courts generally assess financial interest with respect to the longest and most inclusive Class Period.  *See*, *e.g.*, *MGIC*, 256 F.R.D. at 624-25 ("courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period"); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 U.S. Dist. LEXIS 80141, at *7 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) ("Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation.").

Here, contrary to the Institutional Investor Group's assertions, the *Kirshner* Complaint expressly alleges a colorable theory of fraud beginning on February 26, 2021, the date on which Digital Turbine issued a press release announcing its entry into a definitive purchase agreement to acquire AdColony.  *See Kirshner* Complaint ¶ 19.  As alleged in the *Kirshner* Complaint, this press release was false and misleading because it conveyed to investors that Digital Turbine had conducted due diligence sufficient to identify, *inter alia*, any issues that would affect its ability to accurately report revenues associated with the AdColony acquisition.  *See id.* ¶¶ 3, 35.  Any artificial inflation associated with false statements regarding AdColony's revenues and licensing fees would have thus been reflected in Digital Turbine's stock price from February 26, 2021 onward, when Digital Turbine investors anticipated that the Company would be acquiring AdColony.  Indeed, following the announcement of the AdColony acquisition, Digital Turbine's common stock closed at $82.57 per share on February 26, 2021, $10.19, or 14.07%, higher than

the close of the previous trading session. Kirshner thus respectfully submits that there is a meritorious basis for the expanded *Kirshner* Class Period and that such expansion will enable a greater number of defrauded Digital Turbine investors to pursue recovery of their investment losses via this litigation. Accordingly, the Court should adopt the longer *Kirshner* Class Period for the purposes of financial interest assessment and lead plaintiff appointment. It is unclear why the Institutional Investor Group would compromise the interests of a significant number of Class members that it initially sought to represent by arguing that their claims are not meritorious. *See Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *2 (finding it "unclear why a plaintiff would argue for" a more restricted class definition "unless it was in the best interest of that particular plaintiff only" because "no benefits accrue" by restricting the class definition).[2]

## A.  Kirshner Has *Prima Facie* Demonstrated Her Adequacy and Typicality

In addition to possessing the largest financial interest in the relief sought by the Class, Kirshner has also made the requisite *prima facie* showing that she satisfies the typicality and adequacy requirements of Rule 23. *See Tran v. XBiotech Inc.*, 2016 U.S. Dist. LEXIS 22279, at *5 (W.D. Tex. Feb. 23, 2016). First, Kirshner's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th

---

[2] The Institutional Investor Group also argues that "Ms. Kirshner's counsel plainly expanded the Class Period solely to encompass her purchases" of Digital Turbine stock, "which is reason alone to deny her motion. *See* Dkt. No. 26 at 5. Yet the Institutional Investor Group has failed to explain why there is anything improper about Kirshner instructing her counsel to file a Complaint alleging an expanded Class Period—with a meritorious basis, as discussed above—that would permit her to recover her investment losses, or why Kirshner's proactivity in this regard would be a reason to deny her motion. Nor would the expanded Class Period benefit only Kirshner. Rather, it would expand the number of Digital Turbine investors eligible for participation in this litigation and/or increase the recoverable losses incurred by eligible Class members, thereby maximizing the entire Class's potential recovery in this litigation, to the benefit of *all* Class members.

Cir. 2001). Second, Kirshner satisfies the adequacy requirement of Rule 23(a)(4) because she has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. *Id.* Kirshner has further demonstrated her adequacy by the submission of a Declaration, attesting to, *inter alia*, her understanding of and readiness to shoulder the responsibilities of a Lead Plaintiff. *See* Briscoe Reply Decl., Ex. A. Third, Kirshner has further shown her adequacy by identifying a meritorious basis to expand the operative Class Period in this litigation by over five months—from a start date of August 9, 2021 and an end date of May 17, 2022, to a start date of February 26, 2021 and an end date of May 31, 2022—and filing a Complaint alleging the expanded Class Period, thereby enabling a broader class of defrauded Digital Turbine investors to pursue recovery of their investment losses in this litigation. *See Kirshner* Dkt. No. 1 ¶ 1.

The Institutional Investor Group argues against Kirshner's adequacy and/or typicality. First, the Institutional Investor Group claims that Kirshner has not provided the Court with sufficient "background" information about herself to enable it to assess her adequacy. *See* Dkt. No. 26 at 2. However, the PSLRA imposes no requirement that a lead plaintiff movant provide any background information or make any attestations apart from those in the statutorily required Certification, which Kirshner has indeed provided. *See* Dkt. No. 15-3. Nonetheless, Kirshner has submitted herewith a detailed Declaration containing the type of background information— including her age, professional and educational background, and investment experience—that the Institutional Investor Group claims is necessary to assess her adequacy. *See* Briscoe Decl., Ex. A.

Second, the Institutional Investor Group puzzlingly suggests because Kirshner purchased most of her shares of Digital Turbine stock at "even dollar values"—*e.g.*, $80.00 per share, $75.00 per share, $60.00 per share, etc.—she is inadequate or atypical. Dkt. No. 26 at 2. From these prices alone, the Institutional Investor Group speculates that Kirshner "guesstimated" these prices,

8

"entirely omitted from her sworn Certification options transactions which granted her the right to acquire shares at even dollar values", or "entered market limit orders at the claimed purchase price." Dkt. No. 26 at 2. Yet the Institutional Investor Group's speculation has no bearing on Kirshner's adequacy. *See*, *e.g.*, *Mullins*, 2018 U.S. Dist. LEXIS 222090, at \*6 ("Exacting proof is needed to rebut the presumption, for conclusory assertions and mere speculation will not suffice.") (internal quotation marks omitted). Kirshner has attested under penalty of perjury to having bought Digital Turbine shares at the prices set forth in her Certification, and that those attested-to transactions represent the total of her Class Period purchases of Digital Turbine stock. *See* Dkt. No. 15-3 at \*2-\*3. There is no dispute that these prices were within the stock's trading range on the dates in question. Moreover, Kirshner did not have any options transactions during the Class Period. That Kirshner opted to purchase her Digital Turbine securities at "even dollar values" simply reflects an investment decision she made during the Class Period, acting well within her rights, and does not come even close to raising a colorable argument against her adequacy.

## II. THE PSLRA DOES NOT PRIVILEGE INSTITUTIONAL INVESTORS OVER INDIVIDUALS

Effectively conceding that it does not meet the PSLRA's criteria for appointment as Lead Plaintiff, the Institutional Investor Group resorts to a last-ditch argument that its appointment would further a purported statutory preference for the appointment of institutions, rather than individuals, as lead plaintiffs in securities class actions. *See* Dkt. No. 26 at 9. Yet ***the PSLRA's clear language does not mention, much less privilege, institutional investors***. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at \*7 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity."). While there is no dispute in the Congressional record that Congress hoped that institutional investors would seek

appointment as lead plaintiffs, Congress did ***not*** make such an aspiration a basis in the PSLRA's text to deny lead-plaintiff status to individuals who had larger losses than institutional investors:

> The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. ***If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here.*** Instead, Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820-22 (N.D. Ohio 1999) (emphasis added) (citations omitted).[3]

The cases cited by the Institutional Investor Group ostensibly in support of its argument variously involved situations where the only competing movants at issue were institutions,[4] where the appointed institution had the largest financial interest among the competing movants,[5] or where an institution was appointed over a non-institutional movant alleging a larger loss because the non-institutional movant was an atypical class representative.[6] The Institutional Investor Group has cited no authority in which a court disregarded the PSLRA's "most adequate plaintiff" criteria and appointed an institutional lead plaintiff movant over an otherwise qualified individual movant with significantly larger losses solely because it was an institution.

---

[3] *See also Reiger v. Altris Software, Inc.*, 1998 U.S. Dist. LEXIS 14705, at *14 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.").

[4] *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 U.S. Dist. LEXIS 97959, at *4-*7 (S.D.N.Y. Feb. 21, 2007); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006).

[5] *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 853 (E.D. Pa. 2018); *Juliar v. Sunopta Inc.*, 2009 U.S. Dist. LEXIS 58118, at *8-*10 (S.D.N.Y. Jan. 30, 2009).

[6] *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 720 (S.D. Tex. 2021).

**CONCLUSION**

For the foregoing reasons, Kirshner respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Kirshner as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel and BLF as Liaison Counsel for the Class.

Dated: August 26, 2022

Respectfully submitted,

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE
State Bar Number 24001788
THE BRISCOE LAW FIRM, PLLC
12700 Park Central Drive, Suite 520
Dallas, TX 75251
Telephone: 972-521-6868
Facsimile: 281-254-7789
wbriscoe@thebriscoelawfirm.com
*Counsel for Melissa Kirshner and*
*Proposed Liaison Counsel for the Class*

POMERANTZ LLP
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
*Counsel for Melissa Kirshner and*
*Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(admitted *pro hac vice*)
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com
*Additional Counsel for Melissa Kirshner*

**CERTIFICATE OF SERVICE**

This is to certify that on August 26, 2022, I have caused to be filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

*/s/ Willie C. Briscoe*
WILLIE C. BRISCOE