UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JAY ROBISON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>Defendants. | Civil Action No. 1:22-cv-00550-DAE |
| MELISSA KIRSHNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>Defendants. | Civil Action No. 1:22-cv-00731-DAE |

<u>ORDER GRANTING MOTION TO CONSOLIDATE, APPOINTING BURCH AS LEAD PLAINTIFF, AND APPROVING HIS SELECTION OF COUNSEL</u>

The issues before the Court are (1) the consolidation of two pending securities actions; (2) the appointment of a lead plaintiff in the consolidated action; and (3) the approval of lead counsel in the consolidated action.  Five movants[1] filed competing motions for appointment as lead plaintiff and approval of lead

---

[1] James Lowry withdrew his Motion, as did Jonathan Plante.  (Dkts. ## 12, 17, 23, 24.)  Consequently, only three movants remain.

counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("the

PSLRA"). (Dkts. ## 12, 13, 17, 18, 20.)  For the reasons enumerated in this Order,

the Court determines that Movant Howard J. Burch's ("Burch") Motion for

Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of

Selection of Lead Counsel should be **GRANTED**.  (Dkt. # 20.)  Accordingly,

Burch is lead plaintiff, and his selection of Glancy Prongay & Murray LLP

("GPM") as lead counsel and Ahmad, Zavitsanos & Mensing P.C. ("AZA Law") as

liaison counsel is **APPROVED**.  The Court **DENIES** the remaining Motions for

Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.  (Dkts.

## 12, 13, 18.)

## BACKGROUND

This consolidated case arises from two related securities class action

lawsuits brought under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934

(the "Exchange Act") on behalf of purchasers of Digital Turbine, Inc. ("Digital

Turbine") securities.

On June 6, 2022, Plaintiff Jay Robison commenced the first securities

fraud class action against Digital Turbine and certain of its officers (collectively,

"Defendants") in this District, captioned Robison v. Digital Turbine, Inc., et al.,

Case No. 1:22-cv-00550-DAE (the "Robison Action").  Robison filed on behalf of

persons who purchased Digital Turbine common stock between August 9, 2021 and May 17, 2022.  (Dkt. # 1 at 2.)[2]

On July 21, 2022, Plaintiff Melissa Kirshner ("Kirshner") commenced an analogous class action in this District, captioned Kirshner v. Digital Turbine, Inc., et al., Case No. 1:22-cv-00731-DAE (the "Kirshner Action").  The Kirshner Action expanded the class period, representing persons and entities that purchased or otherwise acquired Digital Turbine securities between February 26, 2021 and May 31, 2022.  (Kirshner Action, Dkt. # 1 at 2.)

Both actions alleged harm from Defendants' "materially false and/or misleading [statements]" and failure to disclose to investors:

> (1) that the Company's recent acquisitions, AdColony and Fyber, act as agents in certain of their respective product lines; (2) that, as a result, revenues for those product lines must be reported net of license fees and revenue share, rather than on a gross basis; (3) that the Company's internal control over financial reporting as to revenue recognition was deficient; and (4) that, as a result of the foregoing, the Company's net revenues was overstated throughout fiscal 2022; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

(Dkt. # 1 at 3); see also (Kirshner Action, Dkt. # 1 at 2).

---

[2] Unless specifically labeled "Kirshner Action", the docket citations throughout come from the Robison Action, Case No. 1:22-cv-00550-DAE.

## DISCUSSION

The five competing consolidation, lead plaintiff, and lead counsel motions were filed by Jonathan Plante ("Plante") (Dkt. # 12); Kirshner (Dkt. # 13); James Lowry ("Lowry") (Dkt. # 17); The United Wire Metal and Machine Pension Fund, Local 810 Affiliated Pension Fund, and City of Pontiac Reestablished General Employees' Retirement System (the "Fund Group") (Dkt. # 18); and Burch (Dkt. # 20). Plante and Lowry have since withdrawn their bids for appointment as lead plaintiff. (Dkts. ## 23, 24). Only Burch, Kirshner, and the Fund Group remain contenders for lead plaintiff, and all agree that consolidation is appropriate.

## I.   Motion to Consolidate is Granted

The PSLRA requires the Court to consolidate related actions before appointing a lead plaintiff. See 15 U.S.C. §78u-4(a)(3)(B)(ii). Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact. FED. R. CIV. P. 42(a). The actions allege the same legal and factual basis: Defendants violated the Exchange Act by failing to have sufficient internal control over financial reporting as to revenue recognition, thereby overstating the revenue from AdColony and Fyber to investors' detriment. (Dkt. # 1 at 3); (Kirshner Action, Dkt. # 1 at 2).

Further, the related actions' overlapping, but slightly different, class periods do not prevent consolidation.[3] Both class periods start with an alleged misrepresentation about the value of the acquisitions to Defendants, and both end with a corrective disclosure. The plaintiffs "rely on a common pattern in their allegations: that defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status" of the company. Kaplan v. Gelfond, 240 F.R.D. 88, 92 (S.D.N.Y. 2007), on reconsideration in part sub nom. In re IMAX Sec. Litig., No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009). Accordingly, the Court concludes that consolidation of these cases is appropriate. See, e.g., In re BP, PLC Sec. Litig., 758 F. Supp. 2d 428, 432-33 (S.D. Tex. 2010) (consolidating actions when there were "substantial commonalities," "overlapping [d]efendants," and "a common core of facts and legal issues"). As the Court-appointed lead plaintiff, Burch is ordered to resolve the differences in the proposed class period in his filing of a consolidated Amended Complaint. The Court therefore **ORDERS** the following:

1.      Pursuant to Federal Rule of Civil Procedure 42, the above-captioned related actions are hereby consolidated for all purposes into one action.

---

[3] Compare (Dkt. # 1 at 2 (August 9, 2021 through May 17, 2022), with (Kirshner Dkt. # 1 at 2 (February 26, 2021 through May 31, 2022).

2.      These actions shall be referred to herein as the "Consolidated Action."  This Order shall apply to the Consolidated Action and to each case subsequently filed in this Court relating to the same subject matter as the Consolidated Action.

3.      Every pleading in this Consolidated Action shall bear the following Caption:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **IN RE DIGITAL TURBINE, INC. SECURITIES LITIGATION** | No. 1:22-cv-00550-DAE |
| | CLASS ACTION |
| **THIS DOCUMENT RELATES TO:** | **[TITLE OF DOCUMENT]** |

4.      When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:".  When the document applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the name of the first-listed plaintiff in said action.

5.      All securities class actions on behalf of purchasers of Digital Turbine securities subsequently filed in, or transferred to, this District shall be consolidated into this action.  This Court requests assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might not properly be consolidated as part of this action.

6

6.    A Master Docket and Master File shall be established for the

Consolidated Action.  The Master File shall be No. 1:22-cv-00550-DAE.  All

orders, pleadings, motions, and other documents shall, when filed and

docketed in the Master File, be deemed filed and docketed in each individual

case to the extent applicable.  When an order, pleading, motion, or document

is filed with a caption indicating that it is applicable to fewer than all

individual actions in the Consolidated Action, the clerk shall file such

pleadings in the Master File and note such filing in the Master Docket and in

the docket of each action referenced.

II.    The Court Appoints Burch as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead

plaintiff in "each private action arising under [the Exchange Act] that is brought as

a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C.

§ 78u-4(a)(1).   First, the pendency of the action must be publicized in a widely

circulated national business-oriented publication or wire service not later than

twenty days after filing of the first complaint.  See id. § 78u-4(a)(3)(A)(i).   Next,

the PSLRA provides that the Court shall adopt a presumption that the most

adequate lead plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a [timely] motion in
> response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in

the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.

<u>Id.</u> § 78u-4(a)(3)(B)(iii)(I).   Once this presumption is triggered, it may be

rebutted only upon proof that the presumptive lead plaintiff will not fairly

represent the interests of the class, or "is subject to unique defenses that render

such plaintiff incapable of adequately representing the class."

<u>Id.</u>  § 78u-4(a)(3)(B)(iii)(II).  The Court discusses each requirement in turn.

A.    <u>All Three Movants Satisfy the Timeliness Requirement</u>

On June 6, 2022, notice was published in connection with this action,

(Dkt. # 20-2), giving the parties sixty days—until August 5, 2022—to file a

complaint or motion to be appointed lead plaintiff.  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(aa).  All three competing movants filed their motions by the

August 5, 2022, deadline.  (<u>See</u> Dkts. ## 13, 18, 20).  Accordingly, all three

movants have met the PSLRA's first consideration: timely complaint or motion.

B.    <u>Burch Has the Largest Financial Interest in Relief</u>

The parties dedicated the most time in their briefs to the second

consideration of the PSLRA, which party "has the largest financial interest in the

relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).   While "[t]he

PSLRA does not define 'largest financial interest' or explain how such a

determination should be made," courts generally look to four factors, also known

as the <u>Lax</u> factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period." <u>See</u> <u>Giovagnoli v. GlobalSCAPE, Inc.</u>, No. 17-cv-753, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017); <u>Lax v. First Merchants Acceptance Corp.</u>, 1997 WL 461036, at *5 (N.D. Ill. Aug.11, 1997); <u>see, e.g.</u>, <u>In re Enron Corp. Sec. Litig.</u>, 206 F.R.D. 427, 440 (S.D. Tex. 2002) (using the <u>Lax</u> factors).

To evaluate the <u>Lax</u> factors, the Court must resolve two disagreements between the movants: (1) the appropriate time period for measuring losses; and (2) the method to use when calculating financial losses. After selecting the relevant time period and the appropriate loss calculation method, the Court then applies these parameters to determine which movant suffered the largest financial loss.

      i.     <u>The Relevant Time Period Is The *Kirshner* Period From February 26, 2021 to May 31, 2022</u>

As described earlier, the two complaints filed in this action allege different time periods for calculating losses attributable to each movant at this stage. <u>Compare</u> (Dkt. # 1 ¶ 1 (August 9, 2021 to May 17, 2022)), <u>with</u> <u>Kirshner v. Digital Turbine, Inc.</u>, No. 1:22-cv-731-DAE, Dkt. # 1 ¶ 1 (February 26, 2021 to May 31, 2022). The proposed class periods are summarized below:

| Period Name | Beginning Date & Significance | Ending Date & Significance |
|---|---|---|
| Robison Period | August 9, 2021: Defendants announced its first quarter 2022 financial results, including the erroneous revenue recognition for AdColony and Fyber.  (Dkt. # 1 at 5.) | May 17, 2022: Defendants issues press release indicating it needs to restate its financial statements for June through December 2021.  (Dkt. # 1 at 2.) |
| Kirshner Period | February 26, 2021: Defendants issued a press release announcing purchase agreement for AdColony.  (Kirshner Action, Dkt. # 1 at 6.) | May 31, 2022: Defendants issues press release announcing quarter four and fiscal year 2022 financial results. (Kirshner Action, Dkt. # 1 at 3.) |

Burch and Kirshner ask the Court to use the longer, more inclusive "Kirshner period."  (Dkt. # 25 at 5.)  The Fund Group initially advocated for the Kirshner period, but now requests that the Court use the shorter "Robison period."  (Compare Dkts. ## 18 at 5 with 26 at 4-6.)  For the reasons that follow, the Court holds that the Kirshner period—spanning from February 26, 2021 to May 31, 2022—is the appropriate period for purposes of calculating the financial interest of the movants.

The Fund Group argues that the Robison period is appropriate because "if the Court . . . sustain[s] [the Robison period], Mr. Burch would not be a member of the putative class and Ms. Kirshner would possess the smallest financial interest."  (Dkt. # 26 at 5.)  But this is not a legal argument as to why the Robison period is appropriate; rather, it is a self-serving factual conclusion. Assuming without deciding that the Fund Group's assertion is true, the mere fact

that the Fund Group would prevail under the Robison period but not the Kirshner period is not a legal position, let alone a persuasive one.

In response to the Fund Group's argument, Burch correctly points out that "numerous courts" in the Fifth Circuit "have favored using the longest-noticed class period" when calculating losses for lead plaintiff selection.  In re BP, PLC Sec. Litig., 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010); see Doyle v. Reata Pharms., Inc., No. 21-cv-00987, 2022 WL 1206580, at *2, n. 1 (E.D. Tex. Apr. 22, 2022) ("[T]he Court will use . . . the longer class period with the earlier start date"); Town of Davie Police Pension Plan v. Pier 1 Imports, Inc., No. 3:15-CV-3415-D, 2016 WL 1625774, at *2 (N.D. Tex. Apr. 25, 2016) ("[T]he longest, most inclusive class period encompasses more potential class members and increases potential damages.").

For purposes of naming a lead plaintiff under the PSLRA, the Court adopts the approach of the above-mentioned courts, using "the longest noticed class period unless the factual allegations supporting that period are obviously frivolous." In re BP, 758 F. Supp. 2d at 434.  The Kirshner period is supported by non-frivolous facts.  Specifically, Defendants' February 26, 2021 announcement that acquiring AdColony would be "substantially accretive to our expected profitability in the first full year" may have indeed "conveyed to investors that [Defendants] had conducted due diligence sufficient to identify, *inter alia*, any

11

issues that would affect its ability to accurately report revenues associate with the AdColony acquisition." (Kirshner Action, Dkt. # 1 at 6). Accordingly, the time period from February 26, 2021 to May 31, 2022, is the appropriate class period for measuring the losses of each movant in order to appoint a lead plaintiff.[4]

           ii.    Last In, First Out Is the Appropriate Method for Calculating Losses

The movants do not meaningfully dispute that under the Kirshner period, Kirshner prevails on the first three Lax factors: number of shares purchased during class period, net shares purchased during the class period, and total net funds expended during the class period.[5] See Lax, 1997 WL 461036, at *5. However, the movants disagree on how the Court should calculate the fourth Lax factor, approximate losses.

---

[4] The Court is likewise unpersuaded by the Fund Group's argument that Kirshner's longer time period is somehow "reason alone to deny her motion." (Dkt. # 26 at 5.) The PSLRA does not require plaintiffs to allege only the smallest class period possible, nor does it punish plaintiffs for advocating for the period that would maximize their own—or the entire class's—potential recovery.

[5] According to the "Financial Interest" documents presented by the movants, Kirshner purchased and retained 14,360 of her Digital Turbine securities, and expended $958,220 on her purchases. (Dkt. # 14 at 13); (Kirshner, Dkt. # 9-1 at 2.) The Fund Group purchased and retained 13,527 shares and expended $810,801.68 on its purchases. (Dkt. # 19-4 at 3.) Burch purchased 12,583 shares and retained 12,583 of them, for an expenditure of $929,196. (See Dkts. ## 29 at 7 (only arguing that the three factors should not be given as great a weight as the fourth factor, rather than contesting the statements of fact in Kirshner's opposition chart), 27 at 8, 20-4 at 2.)

Burch and the Fund Group ask the Court to apply the Last In, First Out ("LIFO") method, while Kirshner prefers the District of Nevada's approach in Marjanian v. Allied Nevada Gold Corp., No. 2:14-CV-0650-JCM-VCF, 2015 WL 128691, at *3 (D. Nev. Jan. 9, 2015) (looking only at retained shares to calculate loss). But the Allied Nevada method lacks the robust use enjoyed by the LIFO approach in this Circuit. See, e.g., Hall v. Rent-A-Center, Inc., No. 4:16-CV-978, 2017 WL 1017716, at * 2 (E.D. Tex. Mar. 16, 2017) (finding LIFO methodology "widely accepted). In fact, the only Fifth Circuit case law Kirshner cites used both the LIFO method and a variation of a "loss claimed in motion" method, noting that regardless of which method was used, the movant with the largest LIFO loss prevailed. See Marcus v. J.C. Penney Co., Inc., No. 6:13-CV-736, 2014 WL 11394911, at *4-5 (E.D. Tex. Feb. 28, 2014). As the "majority view seems to be that approximate losses should be calculated using the LIFO method," the Court will use this method for calculating the financial losses suffered by the movants. Strong v. AthroCare Corp., No. A-08-CA-574-SS, 2008 WL 11334942, at *6 (W.D. Tex. Dec. 10, 2008).

Kirshner also argues that Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) supports the Allied Nevada approach by requiring the Court to disregard the purchase price of the shares when calculating losses. (Dkt. # 27 at 7-8.) But Dura does not stand for this proposition. Dura

merely prohibited parties from claiming losses for in-and-out transactions.[6]  See id.

at 342-43; see also Galmi v. Teva Pharm. Indus. Ltd., 302 F. Supp. 3d 485, 498 (D.

Conn. 2017) (explaining that the reasoning of Dura has been extended to loss

calculations in the context of appointing a lead plaintiff).  Pursuant to Dura, the

Court will not consider securities that were sold prior to the first fraud-correcting

disclosure.  See, e.g., Eichenholtz v. Verifone Holdings, Inc., No. C 07–06140,

2008 WL 3925289, at *3 (N. D. Cal. Aug.22, 2008) (holding that losses incurred

before the first fraud-correcting disclosure alleged in an action must be excluded

pursuant to Dura).  But Kirshner's invocation of Dura is nonetheless inapposite, as

Kirshner provided no evidence that Burch sold out of his positions before either the

May 17, 2022, or the May 31, 2022 disclosures.[7]

        Moreover, it is telling that Kirshner herself used the LIFO method to

represent her losses to the Court in her complaint and motion.  Only after

discovering that Burch had a larger interest under LIFO did Kirshner begin

---

[6] In-and-out transactions occur when a stock is purchased after the alleged
fraudulent conduct but sold before the subsequent disclosure of such conduct.  See
Dura, 544 U.S. at 342.  Since these transactions represent inherent market
fluctuations rather than the impact of fraudulent dealings, any such in-and-out
transactions are properly excluded from the loss calculation.  See id. at 342-43.

[7] Burch's "Financial Interest Analysis" buttresses this finding.  (Dkt. # 20-4.)  The
only time Burch sold shares was July 8, 2022, more than a month after both
corrective disclosures.  (Id. at 2.)  The Fund Group, on the other hand, seems to
have sold a number of shares before the first disclosure.  (Dkt. # 19-4 at 3.)

advocating for the <u>Allied Nevada</u> method.  <u>Compare</u> (Dkt. # 14 at 13 (employing

the LIFO method to represent that "Kirshner . . . incurred losses of approximately

$ 694,538"); <u>Kirshner</u> Action, Dkt. # 9-1 at 2 (same)), <u>with</u> (Dkt. # 27 at 8 (arguing

that the LIFO basis "does ***not*** represent Burch's [financial interest] in this litigation

within the meaning of the PSLRA") (emphasis original)).  There is a fine line

between zealous advocacy and gamesmanship in these early-stage filings for

appointment of lead plaintiff.  <u>See, e.g.</u>, <u>Sallustro v. CannaVest Corp.</u>, 93 F. Supp.

3d 265, 276 (S.D.N.Y. 2015) (finding that since the movant's newly proposed

method was "entirely inconsistent with the traditional calculation method [he]

relied on in his moving brief," it "appear[ed] to be a transparent 'attempt to

manipulate the size of [his] losses'") (citing <u>Pirelli Armstrong Tire Corp. Retiree</u>

<u>Med. Benefits Trust v. LaBranche & Co.</u>, 229 F.R.D. 395, 410 (S.D.N.Y. 2004)).

At best, Kirshner's newfound insistence on a loss-calculation method she did not

use or discuss in her original filings discredits her position.  The Court rejects

Kirshner's attempt to change tack on the LIFO method, just as the Court rejected

the Fund Group's about face on the validity of the <u>Kirshner</u> period.

       iii.     <u>Burch Has the Largest Financial Interest</u>

       The Court now turns to the LIFO method to determine the fourth <u>Lax</u>

factor: which movant has the largest "approximate losses suffered during the class

period." <u>Giovagnoli</u>, 2017 WL 11220692, at *3.  Each movant provided a different

LIFO calculation, as follows:

|  | Fund Group (Dkt. # 26 at 4.) | Burch (Dkt. # 25 at 6.) | Kirshner (Dkt. # 27 at 8.) |
|---|---|---|---|
| Fund Group | $529,986 | $519,785 | $459,375 |
| Burch | $699,764 | $693,355 | $700,614 |
| Kirshner | $693,152 | $682,393 | $694,538 |

Burch prevails in all three of the movants' LIFO calculations.[8]  Accordingly, the

fourth <u>Lax</u> factor weighs in Burch's favor.  But given that Kirshner prevails on the

first three <u>Lax</u> factors[9] and Burch prevails on the fourth <u>Lax</u> factor, the Court must

---

[8] It appears that the Burch numbers are only different from the Kirshner numbers in that they account for a longer average into the 90-day period from the second disclosure.  The Fund Group did not discuss how it did its calculations, nor explain the difference in its <u>Kirshner</u> period numbers from those of the other movants.  At this point in the litigation, "the court should not be wading through complex or fact-dependent arguments relative to the parties' calculations."  <u>Pio v. Gen. Motors Co.</u>, No. CIV. 14-11191, 2014 WL 5421230, at *7 (E.D. Mich. Oct. 24, 2014). Accordingly, the Court finds the three LIFO calculations provided are together conclusive of the fact that Burch is the party with the largest financial loss under the LIFO method. Given the early stage of litigation, the Court's calculation of financial loss attributable to each party is not meant to be a binding decision on loss calculations, but to serve as an estimate based on the limited information provided.  <u>Galmi</u>, 302 F. Supp. 3d at 500 n.6.  This preliminary determination is not beyond the Court's abilities in the "context of a fraud-on-the-market action with two corrective disclosures."  <u>Id.</u>

[9] <u>See</u> supra Section (2)(B)(ii).

still weigh these factors to determine who has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Neither the PSLRA nor case law dictates the weight each factor should be given. Kirshner argues that she and Burch are "effectively tied for the largest loss, with only 0.87% separating the two movants' losses," and that "[a] holistic analysis taking into account all four Lax factors thus clearly favors [her.]" (Dkt. # 30 at 6.) However, "[c]ourts consistently consider the fourth factor—the approximate losses suffered—as most determinative to identify the plaintiff with the largest financial loss." Giovagnoli, 2017 WL 11220692, at *3; see also Patel v. Reata Pharm., Inc., 549 F. Supp. 3d 559, 565 (E.D. Tex. 2021) ("It is logical that courts would deem the fourth factor conclusive because this factor is a function of the first three. In view of the foregoing, the Court will proceed to analyze only the fourth Lax factor."); but see Pio, 2014 WL 5421230, at *4 (declining "the invitation to ignore all but the fourth Lax factor," but nonetheless appointing the party with the largest loss as lead plaintiff).

Accordingly, the Court concentrates on the fourth Lax factor—the approximate losses claimed by each movant—and finds that Burch meets the PSLRA's criteria of having "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    Burch Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA requires that a lead plaintiff, in addition to having

suffered the greatest financial loss, "otherwise satisfy the requirements of Rule 23

of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).

In this Rule 23 evaluation, the lead plaintiff must show that he has claims or

defenses that are "typical of the claims or defenses of the class," and that he will

"fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); see

Patel, 549 F. Supp. 3d at 565.  Having identified Burch as the movant with the

largest financial interest, the Court "turns to whether [he] has made a *prima facie*

showing that he meets the typicality and adequacy requirements of Rule 23."  Tran

v. XBiotech Inc., No. A-15-CA-01083-SS, 2016 U.S. Dist. LEXIS 22279, at *5

(W.D. Tex. Feb. 23, 2016).

A plaintiff meets the typicality requirement when his legal claim has

the same essential characteristics as those of the other proposed class

members.   See Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002).

"Factual differences between claims will not defeat typicality if the claims arise

from a similar course of conduct and share the same legal theory."  Tran, 2016 U.S.

Dist. LEXIS 22279, at *6.  All three movants allege the same legal basis for their

claims as stated in the complaints: that Defendants made material misstatements

about the acquisitions of AdColony and Fyber and their impact on Digital

18

Turbine's revenue, leading to a significant decline in the stock value.  (Dkts. ## 18 at 6, 20 at 9, 27 at 9.); see also Giovagnoli, 2017 WL 11220692, at *3 (finding lead plaintiff's analogous securities claims typical of the class).  Burch's claims share essential characteristics of the other plaintiffs' claims, and thus satisfy the typicality requirement of Rule 23(a)(3).

To determine whether Burch meets the adequacy requirement, the Court looks to "(1) the zeal and competence of [Burch's] counsel and (2) the willingness and ability of [Burch] to take an active role in and control the litigation and to protect the interests of absentees."  See Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 130 (5th Cir. 2005).  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."  Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625-26 (5th Cir. 1999).

Looking first at the competence of Burch's proposed counsel, the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  See 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb Burch's choice of counsel unless it is necessary to "protect the interests of the class."  Id. § 78u-4(a)(3)(B)(iii)(II)(aa).  Given the credentials Burch provided for his proposed Lead Counsel, GPM, and Liaison Counsel, AZA Law,

the Court is satisfied that these counsels will be zealous and competent in their representation of the class.  (See Dkts. ## 20-5, 20-6.)

Turning next to Burch as lead plaintiff, the Court finds that Burch himself meets Rule 23's adequacy requirements.  Burch lost over $700,000 by purchasing Defendant's stock during the class period and has no apparent conflicts of interest with the other class members.  This is sufficient to make a preliminary showing of adequacy under Rule 23(a)(4).  See Giovagnoli, 2017 WL 11220692, at *4 (finding the movant adequate where "there is no antagonism between his interests and those of putative class members," and "because of his losses, he has a sufficient interest in the outcome of this action").

D.    The Presumption Has Not Been Rebutted

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has either filed the complaint or made a [timely] motion" for appointment, "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive lead plaintiff will not fairly represent the interests of the Class, or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u–4(a)(3)(B)(iii)(II).  Having determined Burch is the plaintiff with the largest financial interest and his claims

satisfy the typicality and adequacy requirements of Rule 23, he is "entitled to the presumption that he is the most adequate plaintiff to serve as lead plaintiff." <u>Tran</u>, 2016 U.S. Dist. LEXIS 22279, at *7.

       The Fund Group and Kirshner have pointed to no unique defenses that would rebut the presumption of Burch's adequacy.  Instead, the Fund Group argues: (1) that Burch is an "unknown individual who failed to make the requisite adequacy showing," and (2) that under the PSLRA, "institutional investors are considered preferred lead plaintiffs."  (Dkt. # 26 at 6, 9.)  The Court finds neither argument availing.  First, the plain record contradicts the Fund Group's allegation that "[a]ll that is known about Mr. Burch . . . is essentially [his] name[] and claimed financial interest."  (<u>Id.</u> at 6.)  Burch explained that he is a "retired business owner that resides in Kinneoln, New Jersey, and has been managing his own investments for more than 15 years."  (Dkt. # 20 at 10.)  Moreover, the PSLRA does not require a movant to provide facts beyond those showing his loss, adequacy, and typicality.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Given that Burch has provided sufficient information to convince the Court he satisfies the PSLRA's requirements, there is no legal basis for the Fund Group's request for more personal information.

       The Court likewise disagrees with the Fund Group's next argument: that they should get to leap-frog over Burch and Kirshner in the race for lead

plaintiff merely because they are institutional investors.  As Burch points out,

neither the statutory language of the PSLRA nor Fifth Circuit case law supports

such a position.  The PSLRA explicitly lists the factors the Court should consider

here: timely notice, largest financial interest, and satisfaction of Rule 23.  Id.

Notably absent is any blanket consideration of the type of entity who suffered the

financial loss, as at least one other court in this circuit and many courts around the

country have recognized.  In re Alcatel Alsthom, No. MDL 1263, 1999 WL

33756548, at *5,  n.10 (E.D. Tex. June 7, 1999) (discussing that doing so "would

violate the plain language of the statute"; and rejecting a proposal that the

individual and institutions be appointed "co-lead plaintiffs"); Hall v. Medicis

Pharm. Corp., No. CV08-1821PHX-GMS, 2009 WL 648626, at *6 (D. Ariz. Mar.

11, 2009) ("[T]he Ninth Circuit has made clear that the plain language of the

PSLRA does not permit the Court to favor Steamfitters over another plaintiff with

a greater financial stake merely because Steamfitters is an institutional investor.").

## CONCLUSION

Burch timely filed a motion to be appointed lead plaintiff, is the

movant with the largest financial interest, and has made an unrebutted *prima facie*

showing that he meets the typicality and adequacy requirements of Rule 23.

Furthermore, neither the parties nor the Court have identified any unique defenses

that would hamper Burch's ability to represent the class.  Accordingly, the Court

appoints Howard J. Burch as lead plaintiff in this consolidated action.

22

Burch's selection of lead and liaison counsel are hereby approved, pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).   Lead counsel shall have the following responsibilities and duties on behalf of lead plaintiff and the putative class: the preparation and filing of all pleadings; the briefing and argument of all motions; the conduct of all discovery proceedings including depositions; the selection of counsel to act as spokesperson at all pretrial conferences; settlement negotiations; the pretrial discovery proceedings and the preparation for trial and the trial of this matter, and delegation of work responsibilities to selected counsel as may be required; and the supervision of all other matters concerning the prosecution or resolution of the action.

On July 13, 2022, pursuant to the parties' Joint Stipulation (Dkt. # 9), the Court directed the lead plaintiff in this case to file an Amended Complaint within sixty days of the Court's order selecting the lead plaintiff.  (Dkt. # 11.)   The Court allowed Defendants to respond within sixty days of that Amended Complaint.  (Id.)  Accordingly, Burch must file his Amended Complaint within **sixty (60) days** of the entry of this Order, and Defendants must respond within **sixty (60) days** of that Amended Complaint.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, December 19, 2022.

_____
David Alan Ezra
Senior United States District Judge

23