# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **IN RE DIGITAL TURBINE, INC. SECURITIES LITIGATION** | Case No. 1:22-cv-00550-DAE |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | |

**TABLE OF CONTENTS**

Introduction ..................................................................................................................... 1

Key Facts ........................................................................................................................ 2

Argument ........................................................................................................................ 7

I.      Plaintiffs' arguments rely on allegations that are not well-pleaded and are inconsistent with facts alleged in the Complaint. .............................................. 7

II.     Plaintiffs do not plead facts raising a strong inference of scienter. ................... 9

        A.      The Complaint does not raise a strong inference that Defendants intended to, or did, change AdColony's revenue recognition policy to inflate revenues. .......... 9

        B.      The Complaint does not raise a strong inference of severe recklessness. ............ 15

        C.      The opposing inferences in Defendants' favor are overwhelming. ...................... 17

III.    The Complaint does not sufficiently allege the falsity of statements regarding the acquisitions of AdColony and Fyber .................................................................. 18

IV.     The Complaint does not sufficiently allege loss causation. ............................... 19

V.      The Section 20(a) claim fails for lack of a primary violation of the securities laws. ....... 20

Conclusion ....................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes, Inc.*,
 292 F.3d 424 (5th Cir. 2002) ...............................................................................................11

*Alaska Elec. Pension Fund v. Asar*,
 768 F. App'x 175 (5th Cir. 2019)..........................................................................................13

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
 915 F.3d 975 (5th Cir. 2019) ................................................................................................8

*In re ArthroCare Corp. Sec. Litig.*,
 726 F. Supp. 2d 696 (W.D. Tex. 2010)................................................................................12

*In re Baan Co. Sec. Litig.*,
 103 F. Supp. 2d 1 (D.D.C. 2000) .........................................................................................16

*Braun v. Eagle Rock Energy Partners, L.P.*,
 223 F. Supp. 3d 644 (S.D. Tex. 2016) .................................................................................19

*Broad v. Rockwell Int'l Corp.*,
 642 F.2d 929 (5th Cir. 1981) ...............................................................................................15

*Brody v. Zix Corp.*,
 2006 U.S. Dist. LEXIS 69302 (N.D. Tex. Sep. 26, 2006).....................................................11

*Budde v. Glob. Power Equip. Grp., Inc.*,
 Civil Action No. 3:15-cv-1679-M, 2018 U.S. Dist. LEXIS 154159 (N.D. Tex.
 Sept. 11, 2018) .......................................................................................................................12

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
 497 F.3d 546 (5th Cir. 2007) ...............................................................................................11

*Collmer v. U.S. Liquids, Inc.*,
 268 F. Supp. 2d 718 (S.D. Tex. 2001) ..............................................................................8, 12

*In re Comput. Assocs. Class Action Sec. Litig.*,
 75 F. Supp. 2d 68 (E.D.N.Y. 1999)......................................................................................19

*Edgar v. Anadarko Petroleum Corp.*,
 No. H-17-1372, 2019 U.S. Dist. LEXIS 39977 (S.D. Tex. Mar. 13, 2019) ...........................10

*Fener v. Belo Corp.*,
 425 F. Supp. 2d 788 (N.D. Tex. 2006) .................................................................................10

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ...............................................................................14

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ...................................................................................19

*In re IMAX Sec. Litig.*,
    587 F. Supp. 2d 471 (S.D.N.Y. 2008)......................................................................16

*Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ..........................................................................9, 13, 14

*In re Integrated Elec. Servs., Inc. Sec. Litig.*,
    No. 4:04-CV-3342, 2006 U.S. Dist. LEXIS 1425 (S.D. Tex. Jan. 10, 2006)..........13

*Local 731 I.B. of T.Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ...............................................................................9, 14

*In re MCI Worldcom, Inc. Sec. Litig.*,
    191 F. Supp. 2d 778 (S.D. Miss. 2002).....................................................................19

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) .......................................................................16

*Plaisance v. Schiller*,
    No. H-17-3741, 2019 U.S. Dist. LEXIS 42073 (S.D. Tex. Mar. 14, 2019) ............17

*Reiger v. PricewaterhouseCoopers, LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000).................................................................16, 17

*In re Seitel, Inc. Sec. Litig.*,
    447 F. Supp. 2d 693 (S.D. Tex. 2006) ......................................................................13

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................................8, 20

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ....................................................................................12

*Yoshikawa v. Exxon Mobil Corp.*,
    Civil Action No. 3:21-CV-00194-N, 2022 U.S. Dist. LEXIS 178454 (N.D.
    Tex. Sep. 29, 2022)....................................................................................................14

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................9

Exchange Act Section 20(a)............................................................................................20

iii

Private Securities Litigation Reform Act.............................................................................1, 2, 9, 18

**Other Authorities**

Digital Turbine, Inc.'s Form 10-K filed June 2, 2020 ...................................................................19

**INTRODUCTION**

The Court should dismiss Plaintiffs' Complaint because it is a paragon of the abusive securities suit that the Private Securities Litigation Reform Act ("PSLRA") is intended to prevent. Plaintiffs start with Defendant Digital Turbine, Inc.'s ("Digital Turbine" or the "Company") May 17, 2022 announcement that it would restate prior financials for three quarters, and search backwards to "find" a fraud based on an accounting error. The result is an internally inconsistent Complaint that depends on mischaracterizations and unreasonable assumptions.

Plaintiffs fail to allege a securities fraud claim under the PSLRA's heightened pleading standard. The Complaint does not plead a particularized basis for a strong inference of scienter. There are no specific facts to show that Digital Turbine's CEO William Stone or CFO Barrett Garrison (the "Individual Defendants") knew of underlying accounting issues at two companies, AdColony and Fyber, that Digital Turbine recently acquired. The lynchpin of Plaintiffs' fraud theory is the demonstrably false allegation that Digital Turbine changed AdColony's revenue recognition policy during the first three quarters after the acquisition in violation of Generally Accepted Accounting Principles ("GAAP"). The more cogent and compelling explanation for the restatements is that the accounting issues were complicated, subjective, and were not discovered by Digital Turbine until after the acquisitions were completed.

Plaintiffs have also failed to sufficiently allege the elements of falsity and loss causation. The pre-acquisition statements challenged in the Complaint were not false when made, are protected forward-looking statements, or are immaterial puffery. Plaintiffs fail to plead loss causation for the challenged statements because the alleged corrective disclosures did not address the same subjects as the challenged statements.

1

**KEY FACTS**

Defendants' opening brief sets forth the factual background of this case in detail.  *See* Dkt. 44.  For the purposes of this Reply, Defendants highlight the following key facts:

*First*, Digital Turbine did not change the revenue recognition methodology used by AdColony or Fyber at the time of the acquisitions.  Plaintiffs attempt to show that Digital Turbine did so by resorting to self-serving misrepresentations about Digital Turbine's filings with the Securities & Exchange Commission ("SEC").  That is improper and unavailing.

Digital Turbine attached the pre-acquisition audited financial statements of AdColony as an exhibit to its July 14, 2021 Form 8-KA filing. ¶ 90.  AdColony described its revenue recognition policy in a note to its audited financial statements, which explained the  circumstances under which AdColony would recognize revenue on either a principal-gross or agent-net basis.  *Id.*  Importantly, the policy did not state how much, if any, revenue AdColony  recognized on an agent-net basis— it only identified the type of contractual arrangements that would qualify for agent-net revenue recognition.[1]  *Id.* These types of financial statement disclosures are routine and may relate to matters that are not applicable to a specific reporting period.  Plaintiffs try to twist this statement of accounting policy—which is, by definition, a set of guidelines—into a statement of fact that AdColony recognized a material portion of its revenue on an agent-net basis prior to Digital Turbine's acquisition.  This is not a well-pleaded fact, it is a self-serving fiction.

---

[1] The relevant sentence of AdColony's revenue recognition policy reads, "For agreements where the publisher has a direct contractual relationship with the advertiser, revenue is recognized on a net basis, as AdColony is not the primary obligor and does not assume the fulfillment and credit risk." ¶ 90.

Plaintiffs then claim that Digital Turbine "admitted" in its May 17, 2022 Form 8-K that it changed AdColony's accounting policies upon acquisition. ¶ 93; Opposition Brief ("Opp.") at 9, n.4. This is also fiction, Digital Turbine made no such admission. Rather, it stated the following:

> After a detailed review of the Acquired Companies product lines and related contracts with customers and publishers, the Company concluded that each Acquired Company acts as an agent in certain of their respective product lines and, as a result, the revenues for those product lines should be reported net of license fees and revenue share. Previously, all revenues of the Acquired Companies, which are reported as separate segments referred to as In App Media – AdColony and In App Media – Fyber, respectively, were reported on a gross basis.

¶ 59. When Digital Turbine said that previously all revenues of the acquired companies "were reported on a gross basis," it stated a historical fact—the acquired companies had reported their revenues pre-acquisition on a gross basis, and Digital Turbine reported them the same way post-acquisition. Digital Turbine did not change Ad Colony's revenue reporting from agent-net to principal-gross following acquisition, and it never said that it did.

Plaintiffs' assertion of an accounting change not only misrepresents Digital Turbine's SEC filings, it is also contradicted by other allegations in the Complaint. Plaintiffs provide this chart in paragraph 51 showing AdColony's reported revenue for the fourth quarter of 2021 (pre-acquisition) and the first three quarters of 2022 (post-acquisition), prior to the restatements:

|  | Net Revenue | Pro Forma Net Revenue | YoY Growth % |
|---|---|---|---|
| **AdColony** | | | |
| Q4 2021[3] | $58.3 million | (not reported) | 37% |
| Q1 2022 | $44.9 million | $63.24 million | 46% |
| Q2 2022 | $61.5 million | (not reported) | 19% |
| Q3 2022 | $94.3 million | (not reported) | 28% |

The Complaint's footnote to the Q4 2021 figure in the Complaint acknowledges that Digital Turbine's report of $58.3 million in net revenue for AdColony was based on AdColony's pre-acquisition financial statements for the Q4 2021. *See* ¶ 51, n.3. The fourth fiscal quarter of 2021 ended on March 31, 2021, and Digital Turbine did not acquire AdColony until April 29,

2021. ¶ 5. In other words, it is undisputed that the $58.3 million net revenue figure for Q4 2021 was determined and reported pre-acquisition by AdColony, not Digital Turbine.

Plaintiffs' theory of fraud is that pre-acquisition, AdColony reported some or all of its revenue on an agent-net basis (including in its Q4 2021 financial statements) in accordance with GAAP, and that Digital Turbine changed AdColony's revenue reporting post-acquisition to only principal-gross in violation of GAAP to artificially inflate revenue. *See* ¶ 17. But the chart excerpted above refutes that theory because it shows no revenue inflation in the quarters following the acquisition. Simply stated: if Digital Turbine had changed AdColony's revenue reporting to inflate revenue, then there should be significant revenue inflation following the acquisition. But Q1 and Q2 2022 net revenue for AdColony was only slightly higher than the last pre-acquisition quarter: $63.24 million in Q1 2022 (on a pro forma net revenue basis) and $61.5 million in Q2 2022 (both post-acquisition) versus $58.3 million in Q4 2021 (pre-acquisition).

The reason why there was not a significant jump in revenue for AdColony between Q4 2021 and Q1 2022 is because AdColony's revenue for Q4 2021 was overstated by 48%, as alleged in this chart from paragraph 72 of the Complaint:

|  | As Reported Q4 2021 Net Revenue | As Restated Q4 2021 Net Revenue | Amount Overstated | % Overstatement |
|---|---|---|---|---|
| AdColony | $58.3 million | $39.4 million | ($18.9 million) | 48% |

There is no dispute that the AdColony acquisition had not yet occurred in Q4 2021, meaning that **AdColony's revenue was overstated for Q4 2021 because of AdColony's own revenue recognition practices in place before the acquisition.**[2] Thus, there is an irreconcilable

---

[2] Note that while Plaintiffs claim that Digital Turbine "restated" AdColony's revenue for Q4 2021, Digital Turbine cannot restate AdColony's financials for the period ending March 31, 2021 because Digital Turbine did not own AdColony at that time. Digital Turbine acquired AdColony on April 29, 2021. ¶ 5.

contradiction between Plaintiffs' allegation that AdColony "correctly" accounted for its revenue using agent-net accounting prior to the acquisition and the allegation that AdColony's pre-acquisition financial statements for Q4 2021 overstated its revenue by 48%.

Other allegations in the Complaint further illustrate the falsity of Plaintiffs' assertion that Digital Turbine changed AdColony's revenue recognition policy in violation of GAAP. Plaintiffs allege in paragraph 72 that AdColony overstated its revenue for Q4 2021 by 48%, which is nearly identical to the percentages by which Plaintiffs allege Digital Turbine overstated revenue attributable to AdColony in the first and second quarters following the acquisition (¶ 65):

| | | Q1 2022 | Q2 2022 | Q3 2022 |
|---|---|---|---|---|
| AdColony Net Revenues | As Reported | $44.9 million | $61.5 million | $94.3 million |
| | As Restated | $30.3 million | $40.6 million | $58.4 million |
| | Amount Overstated | $14.6 million | $20.9 million | $35.9 million |
| | % Overstated | 48.2% | 51.5% | 61.5% |

The only way to reconcile these discrepancies is to conclude that Digital Turbine left AdColony's revenue recognition practices in place following the acquisition. This explains why there was no significant jump in reported revenue between AdColony's pre-acquisition Q4 2021 results and AdColony's post-acquisition Q1 and Q2 2022 results. It also explains why AdColony's Q4 2021 revenue was overstated by the same percentage as in the post-acquisition quarters.

What actually happened is that Digital Turbine conducted an initial assessment pre-acquisition and left in place the respective accounting treatments used by AdColony and Fyber, relying in part on the companies' financial statements that were audited by Big 4 accounting firms. Dkt. 45-19 at 2; Dkt. 45-6 at 8. Post-acquisition, the Company conducted a more comprehensive review with the assistance of KPMG, and determined that some AdColony and Fyber product lines should have been reported using agent-net rather than principal-gross accounting treatment. Dkt. 45-3 at 35; Dkt. 45-8 at 1.

*Second,* the accounting restatements did not affect Digital Turbine's bottom-line financial results.  There was no impact on income, cash flows from operations, liquidity, or the balance sheet.  While reported revenue decreased, costs also decreased by an equal amount due to the impact of the agent-net reporting.  Dkt. 45-8 at 1.

*Third*, Digital Turbine only identified a material weakness in its internal control for business combinations because of the accounting restatements.  That is, at the time of the AdColony and Fyber acquisitions, Digital Turbine's controls "did not include a control adequately designed to ensure acquiree accounting policies, as they relate to presentation and classification, were conformed to those of the Company and GAAP." Dkt. 45-5 at 102.  The issue was a failure to identify preexisting issues with revenue recognition for certain AdColony and Fyber business lines during Digital Turbine's due diligence process.  It was *not* because Digital Turbine changed the revenue recognition policies of the acquired companies to be in violation of GAAP.

*Fourth*, the issue of principal-gross versus agent-net accounting treatment is subjective, qualitative, and complicated.  Not only does it require a contract-by-contract review to determine the nature of goods and services governed by the contracts, but an entity can be both a principal and an agent with respect to a contract if the agreement covers more than one specified good or service.  FASB, ASC 606-10-55-36.

*Fifth*, there is not a single citation to an internal document, confidential witness allegation, or any other specific factual allegation showing that Defendants changed AdColony's revenue recognition policy or ignored red flags about pre-acquisition accounting by AdColony and Fyber.

*Sixth*, there is no plausible motive for the fraud alleged in this case.  Only one of the Individual Defendants, Stone, is alleged to have sold stock during the Class Period, and his singular sale in March 2022 of 5.8% of his Digital Turbine stock did not represent a significant

6

amount of his Company holdings.   Stone also sold stock both before and after the Class Period, and held onto over a million shares of Digital Turbine stock during the relevant time.

## ARGUMENT

The Court should dismiss the Complaint because Plaintiffs have failed to adequately plead securities fraud under the PSLRA's heightened pleading standard.  Plaintiffs do not allege any particularized facts that raise a strong inference of scienter, meaning that Defendants acted with an intent to deceive or with severe recklessness.  Plaintiffs also fail to properly plead falsity and loss causation.  Plaintiffs' opposition only further exposes the failings of the Complaint because many of Plaintiffs' arguments rely on allegations about AdColony's revenue recognition policy that are not well-pleaded.  The Court should therefore grant Defendants' motion to dismiss.

**I.**      **Plaintiffs' arguments rely on allegations that are not well-pleaded and are inconsistent with facts alleged in the Complaint.**

Plaintiffs' opposition   relies   on misrepresentations and conclusions rather than   well-pleaded facts.  For example:

- Digital Turbine's statements about its review of AdColony's financials were materially false and misleading because Digital Turbine did not disclose that it changed AdColony's revenue recognition policy following the acquisition in violation of GAAP.  Opp. at 13, 23.

- AdColony's revenue recognition policy proves that it actually applied agent-net revenue accounting pre-acquisition, which was a red flag that Defendants ignored.  Opp. at 17–18, 21.

- AdColony and Fyber accounted for revenue in different ways prior to the acquisition, which was an accounting irregularity that Defendants should have spotted.  Opp. at 19, 29.

The Court should reject these arguments.  Plaintiffs assume, without alleging any specific factual basis, that a statement in AdColony's revenue recognition policy about agent-net accounting means that AdColony actually did  record a significant amount of revenue on an agent-

7

net basis pre-acquisition. Similarly, Plaintiffs mischaracterize a statement in Digital Turbine's May 17, 2022 Form 8-K as an "admission" that Digital Turbine changed AdColony's accounting treatment. The Court is not required to accept these mischaracterizations and conclusions as true because "conclusory allegations" and "unwarranted deductions … are not 'well-pleaded facts' for purposes of evaluating a complaint." *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Plaintiffs' claims that AdColony pre-acquisition recognized revenue on an agent-net basis and then Digital Turbine changed that methodology post-acquisition are also inconsistent with other facts pleaded in the Complaint. Specifically, the allegation that Digital Turbine changed AdColony's revenue reporting to inflate revenue is not consistent with the pre- and post-acquisition revenue figures for AdColony, which are not significantly different. *See* ¶ 51 (alleging pre-acquisition Q4 2021 revenue of $58.3 million and post-acquisition quarterly revenue of $63.24 million for Q1 2022 and $61.5 million for Q2 2022); *see also supra* at 4. The allegation of an accounting change by Digital Turbine in violation of GAAP is also inconsistent with Plaintiffs' allegation that AdColony's pre-acquisition financial results for Q4 2021 overstated revenue by 48%. ¶ 72; *supra* at 5.

The opposition also attempts to argue that the differences between Fyber's and AdColony's revenue recognition policies should have alerted Defendants to a potential issue. *See* Opp. at 19, 29. But Plaintiffs did not cite Fyber's policy in the Complaint, nor do they attempt to explain in any detail how the respective policies differed. Without such an explanation, Plaintiffs have not alleged with particularity why the unspecified differences in the policies would have been apparent to Defendants. *See Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 746 (S.D. Tex. 2001)

8

(dismissing a Section 10(b) claim because the complaint "stated numerous conclusions without alleging any factual underpinning").

## II.      Plaintiffs do not plead facts raising a strong inference of scienter.

The PSLRA establishes a high standard for pleading scienter to deter suits like this one.  A complaint alleging a violation of the federal securities laws must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to "each act or omission."   15 U.S.C. § 78u-4(b)(2)(A).  Plaintiffs must particularly allege that each Defendant acted with "an intent to deceive, manipulate, defraud or severe recklessness." *Local 731 I.B. of T.Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016).  The PSLRA requires a "strong inference" of scienter," which means that the allegations must be more than "reasonable" or "permissible"—they must be "cogent and compelling." *Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008).  Plaintiffs' allegations do not even approach this standard, and the Court can dismiss all the challenged statements for lack of scienter.

Plaintiffs' scienter argument boils down to the following: "either Defendants were aware of principal-gross/agent-net revenue accounting and abandoned its application to boost revenues, or Defendants were severely reckless in not identifying and applying principal-gross/agent-net accounting prior to the Restatement." Opp. at 23–24.  Plaintiffs fail to plead particularized facts to support a strong inference for either theory.

### A.      The Complaint does not raise a strong inference that Defendants intended to, or did, change AdColony's revenue recognition policy to inflate revenues.

As explained above, Plaintiffs fail to allege any well-pleaded facts showing that Digital Turbine changed AdColony's revenue recognition policy post-acquisition.  Plaintiffs also fail to allege a single conversation or meeting in which an Individual Defendant discussed changing

9

AdColony's revenue recognition policy. There are no confidential witnesses that claim Defendants switched the accounting treatment for AdColony's revenue from agent-net to principal-gross. Plaintiffs' say that such allegations are unnecessary. Opp. at 18 n.7. To be clear, however, Defendants' argument is not that Plaintiffs have failed to provide necessary documentary evidence or confidential witness allegations. Rather, Plaintiffs must "allege specific facts about the defendant speaker's state of mind when each challenged statement was made" and have failed to do so. *Edgar v. Anadarko Petroleum Corp.*, No. H-17-1372, 2019 U.S. Dist. LEXIS 39977, at *21 (S.D. Tex. Mar. 13, 2019). The Complaint does not allege any specific facts—such as meetings, conversations, documents, or confidential witness statements—to show intent. Instead, Plaintiffs offered only generic allegations that fail to raise a strong inference that Defendants intended to deceive investors.

    **1.       The "motive" allegations do not raise a strong inference of scienter.**

Plaintiffs attempt to show motive based on one stock sale by Individual Defendant Stone, one stock sale by a non-Defendant Collins, and bonuses paid to Individual Defendants Stone and Garrison. These allegations do not raise a strong inference of scienter.

*First*, the Complaint does not provide the proper context for Stone's sales, which negates any inference of fraudulent intent. *See Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 813 (N.D. Tex. 2006) (explaining that context determines whether "sales are in fact unusual or suspicious"). Plaintiffs claim that Stone's sale in March 2022 was suspicious because it occurred two months before the restatements, and was unusual because Stone did not sell any shares during the 12 months before or after the class period. But, as Plaintiffs acknowledge, Stone sold shares both before and after the Class Period. Opp. at 25, n.14. Moreover, the sale during the Class Period represented a small percentage of Stone's overall holdings (about 5.8% of his 1.2 million shares) and Stone held onto over a million shares of Digital Turbine during the Class Period. The

10

allegations about Stone's March 2022 trade do not raise a strong inference of scienter because he ultimately held onto 95% of his holdings and did not sell them at the top of the market. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 553 (5th Cir. 2007) ("[T]he fact that Allen retained over 700,000 shares … indicates that he did not possess scienter regarding the alleged fraud, because otherwise he would have sold these shares before the price fell.").

The only response Plaintiffs can muster is that sales can support scienter when considered in conjunction with other scienter allegations. Opp. at 25 n.15–16. Okay, but what other allegations? Plaintiffs do not cite any facts demonstrating Stone's state of mind—no allegations of conversations, receipt of contradictory information, or any other indicia of intent.

*Second*, Plaintiffs do not allege any suspicious sales by CFO Barrett Garrison. Even if the Court accepts Plaintiffs' allegation that Stone's single sale was suspicious, the lack of suspicious sales by Garrison undermines any inference of scienter from Stone's sale. *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 435 (5th Cir. 2002) ("[E]ven unusual sales by one insider do not give rise to a strong inference of scienter when other defendants do not sell some or all of their shares during the Class Period."). The case that Plaintiffs cite in support of their argument that sales can support scienter even when not every defendant sells shares only further illustrates the tenuity of Plaintiffs' allegations. In *Brody v. Zix Corp.*, three of the five individual defendants exercised their stock options on the same day and all three sold over 80% of their personal holdings. 2006 U.S. Dist. LEXIS 69302, at *18 (N.D. Tex. Sep. 26, 2006). The case does not stand for the proposition that one defendant's sale of 5.8% of his stock holdings can raise a strong inference of scienter despite the lack of sales by other defendants.

*Third*, Plaintiffs provide no legal basis for their allegation that sales by former Chief Technology Officer Christine Collins provide a basis to infer scienter on behalf of Stone, Garrison,

11

and Digital Turbine.  Collins is not a defendant, did not make any of the statements challenged in the Complaint, was not involved in Digital Turbine's accounting, and sold shares almost a year before the May 2022 restatements.  Plaintiffs do not cite any legal authority holding that these circumstances allow the Court to infer scienter on behalf of Stone or Garrison.

*Fourth*, Plaintiffs concede that bonuses paid to Stone and Garrison do not show intent to defraud investors because they are not similar to incentive-based compensation found by courts in the Fifth Circuit to potentially support a strong inference of scienter.  Opp. at 28.  Plaintiffs' only response is that the bonuses should be considered along with other allegations of scienter.  *Id.*  But Plaintiffs ignore Fifth Circuit authority: while "bonus plans may be considered in conjunction with other scienter allegations," they are "probative only in extraordinary cases."  *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 723 (W.D. Tex. 2010).  Plaintiffs do not allege that Digital Turbine's bonus plan was extraordinary in either amount or in design, which means it does not weigh in favor of scienter *even when considered with the other allegations*.

As Plaintiffs do not allege a plausible motive, they must show scienter "by the more difficult method of 'identifying circumstances that indicate conscious behavior on the part of the defendant.'" *Collmer*, 268 F. Supp. 2d at 747 (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  As set forth below, Plaintiffs fail in this task too.

**2.      The magnitude of the restatements does not raise a strong inference of scienter.**

Plaintiffs' allegations about the magnitude of the restatements do not raise a strong inference of scienter under well-established Fifth Circuit law for two reasons.

*First*, the magnitude of an accounting restatement cannot raise a strong inference of scienter on its own.  The Complaint must allege that Defendants "knew that they were publishing materially false information or were severely reckless in publishing such information."  *Budde v. Glob. Power Equip. Grp., Inc.*, Civil Action No. 3:15-cv-1679-M, 2018 U.S. Dist. LEXIS 154159,

12

at *20 (N.D. Tex. Sept. 11, 2018).  The Complaint fails in both respects.  There are no factual allegations "connecting the corporate executives to specific contracts or accounting or management practices that led to the alleged overstatements."  *Shaw Grp.,* 537 F.3d at 540.  Neither are there specific allegations of severe recklessness, as outlined in Section II.B.

*Second*, the restatements must be considered in the overall context of Digital Turbine's finances to determine its significance.  *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181 (5th Cir. 2019).  The authority cited by Plaintiffs shows only that restatements with negative financial implications can support an inference of scienter.  *See In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 705 (S.D. Tex. 2006) (finding an inference of scienter where the restatement meant that the defendant company was not in compliance with financial covenants, could not borrow under its credit facility, and reported a net loss rather than net income for the fiscal year).  Those circumstances are not present here.  Digital Turbine's restatements did not affect the Company's bottom-line financial results in any quarter, and Fifth Circuit courts in similar cases have held that such adjustments did not contribute to an inference of scienter.[3]

### 3.    "Additional factors" do not raise a strong inference of scienter.

Plaintiffs' opposition brief cites the core operations doctrine and SOX certifications as additional factors that "strengthen" the inference of scienter.  Opp. at 27–28.  First, Plaintiffs argue that Digital Turbine's "focus on growth" and revenue creates a strong inference of scienter based on the "core operations" doctrine.  *Id.*  The Court can disregard this argument because Plaintiffs

---

[3] *See, e.g.*, *In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-CV-3342, 2006 U.S. Dist. LEXIS 1425, at *8 (S.D. Tex. Jan. 10, 2006) (finding no inference of scienter based on a restatement where the accounting errors "did not disguise a failing company or turn an ostensible profit into a loss").  Plaintiffs attempt to distinguish this case based on the size of the restatement, and thereby miss the mark entirely.  The decision stands for the proposition that the financial significance of the correction, and not simply the size of the error, is important for the Court's scienter analysis.

did not allege this theory of scienter in the Complaint.[4]  The facts as alleged in the Complaint also fail to support an inference of scienter based on the core operations doctrine.

Cases where courts have applied the doctrine "exhibit some combination of four considerations": (1) small size, (2) a transaction that was critical to the company's continued vitality, (3) the misrepresented or omitted information would have been readily apparent to the speaker, and (4) the defendant's statements were internally inconsistent with each other.  *Diodes*, 810 F.3d at 959.  These circumstances are not present here.  Plaintiffs concede that Digital Turbine is larger than the typical "core operations" company, Opp. at 28 n.20,  and "size alone can render the [doctrine] inapplicable."[5]  Plaintiffs do not allege that Digital Turbine was dependent on the acquisitions for its continued vitality, and the restatements did not affect Digital Turbine's bottom-line financial results.  The accounting issues in this case were not readily apparent because they were only discovered post-acquisition after a comprehensive review by an outside accounting firm.  Finally, there is no allegation that Defendants' statements were internally inconsistent.

Plaintiffs also concede that the SOX certifications contribute to scienter only if Defendants had reason to know that the financial statements contained material misrepresentations or omissions.  Opp. at 28.  In other words, SOX certifications only support a strong inference of scienter if Plaintiffs also sufficiently plead severe recklessness. *See Shaw Grp.,* 537 F.3d at 545 (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)) ("[A] Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely

---

[4] Nowhere in the Complaint do Plaintiffs allege scienter based on Digital Turbine's "core operations." The opposition brief cites to paragraphs 36, 37, and 46 through 56 of the Complaint on this point, but those paragraphs are in the background section of the Complaint.

[5] *Yoshikawa v. Exxon Mobil Corp.*, Civil Action No. 3:21-CV-00194-N, 2022 U.S. Dist. LEXIS 178454, at *11 (N.D. Tex. Sep. 29, 2022).

reckless in certifying the accuracy of the financial statements.").  Plaintiffs do not satisfy this requirement, as detailed in Section II.B below.

      **B.**      **The Complaint does not raise a strong inference of severe recklessness.**

As Plaintiffs do not have any specific facts that raise a strong inference that Defendants changed AdColony's revenue recognition policy or did so with intent to deceive, they resort to "must have known" allegations to try to argue severe recklessness.  The standard for severe recklessness, however, is the highest possible scienter bar that Plaintiffs could hope to clear.  Plaintiffs must allege "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir. 1981).  The "danger of misleading" investors must be "either known to the defendant" or "so obvious that the defendant must have been aware of it." *Id.* at 962.

Plaintiffs' argument is that differences in the revenue recognition policies of AdColony and Fyber were "red flags" of accounting issues that Defendants ignored.  Opp. at 17–19, 21, 29.  This argument fails for three reasons.  *First*, it relies on the faulty premise that there were differences in revenue recognition between the two companies.  Defendants have explained in exhaustive detail why Plaintiffs' assertions about AdColony's revenue recognition policy lack any specific factual basis and are contradicted by other allegations in the Complaint.  Plaintiffs, on the other hand, have not explained how the policies of AdColony and Fyber were materially different beyond the conclusory allegation that AdColony recognized revenue on an agent-net basis.

*Second*, Plaintiffs' severe recklessness argument fails because it does not consider the complex and subjective nature of agent-net versus principal-gross accounting.  Plaintiffs assert without any factual basis that the underlying accounting issues were "straightforward."  Opp. at 23.  The reality is that a comprehensive, contract-by-contract review by an outside accounting firm

15

was necessary to identify AdColony and Fyber's revenue recognition issues. This distinguishes the instant case from the authority cited by Plaintiffs. *See In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000) (contrasting the "failure to detect an inaccuracy" with the "conscious choice to recognize revenue in a manner alleged to be improper"); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 638 (E.D. Va. 2000) (alleging improper revenue recognition as to only three contracts).

*Third*, Plaintiffs' allegation that Defendants ignored obvious accounting issues is not consistent with the facts of the AdColony and Fyber acquisitions. Both companies were audited without issue pre-acquisition by Big 4 accounting firms and both companies warranted to Digital Turbine that its financials were correct. *Cf. In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 482 (S.D.N.Y. 2008) (explaining that in a mere "GAAP violation case," the complex and subjective nature of the applicable accounting rules and the reliance on an outside accounting firm cut against an inference of scienter). Plaintiffs do not cite any authority holding that reliance on such information is an extreme departure from the standards of ordinary care that would constitute severe recklessness. *See* Opp. at 18–19.

Without a specific, particularized allegation of obvious differences in revenue recognition at the acquired companies, Plaintiffs' "red flag" argument collapses. Plaintiffs are left with the argument that Stone and Garrison must have known about the accounting issues prior to the restatements because revenue and growth were important to Digital Turbine. Opp. at 18, 27–28 (citing Defendants' statements), 21–22 (citing analyst reports). But revenue and growth are important to every business. Following Plaintiffs' logic, any company that restates its revenue is severely reckless. *See Reiger v. PricewaterhouseCoopers, LLP*, 117 F. Supp. 2d 1003, 1009 n.5 (S.D. Cal. 2000) (allegations that a company "had weak internal accounting controls and needed

16

to report strong revenues" were "present in almost every securities fraud action").

Without specific and plausible allegations that Defendants ignored obvious red flags, Plaintiffs have alleged, at most, a failure to detect an underlying accounting issue. This is not an "extreme departure from the standards of ordinary care." It is a mistake that Plaintiffs attempt to transform into fraud. *See Plaisance v. Schiller*, No. H-17-3741, 2019 U.S. Dist. LEXIS 42073, at *40–41 (S.D. Tex. Mar. 14, 2019) (dismissing a complaint that did not plead specific facts showing why the alleged accounting deficiencies were "reckless as opposed to negligent mistakes").

### C.    The opposing inferences in Defendants' favor are overwhelming.

Considered individually, Plaintiffs' scienter allegations are not cogent or compelling. But when considered together, the irrationality of Plaintiffs' theory of fraud becomes painfully apparent. As alleged by Plaintiffs, Digital Turbine's CEO and CFO changed AdColony's revenue recognition practices post-acquisition to fraudulently inflate Digital Turbine's revenue figures, but held onto millions of shares of Digital Turbine stock instead of selling to take advantage of the fraud, and then hired KPMG to uncover their obvious accounting scheme less than a year later. Once discovered, Stone and Garrison caused Digital Turbine to immediately disclose the accounting errors, leading their personal stock holdings to decrease in value by millions of dollars when the market reacted to the restatements. Viewed holistically, Plaintiffs' scienter allegations are not cogent or compelling, but absurd. *See Reiger*, 117 F. Supp. 2d at 1013 (highlighting the plaintiffs' failure to explain why a defendant would "deliberately ignore improperly recognized revenues" only to "recommend a restatement" just months later).

The more compelling inferences are in Defendants' favor: Digital Turbine maintained AdColony and Fyber's pre-acquisition revenue recognition practices and acted in reliance on their audited financial statements; conducted a preliminary review of the companies' revenue recognition that did not reveal any obvious issues; then, post-acquisition hired a third-party

17

accounting firm to conduct a more in-depth, comprehensive review; and then self-reported and corrected the issues identified by the outside accountant. Unlike Plaintiffs' theory of fraud, these inferences in Defendants' favor are consistent with both the facts alleged in the Complaint and common sense.

### III.    The Complaint does not sufficiently allege the falsity of statements regarding the acquisitions of AdColony and Fyber

The Court should dismiss statements alleged in the Complaint concerning Digital Turbine's acquisitions of AdColony and Fyber because Plaintiffs do not adequately allege that the statements were materially false or misleading. The statements were either true when made, protected forward-looking statements, or immaterial puffery.

*First*, the statements quoted in paragraphs 109 through 114 of the Complaint concerning revenues and growth for AdColony and Fyber pre-acquisition were true when made. The Court can dismiss the statements because they recount historical facts—namely, that AdColony and Fyber reported certain revenue and growth figures for the quarter ending March 31, 2021. Plaintiffs' only response is that the statements are false because Digital Turbine restated AdColony and Fyber's pre-acquisition financial results. Opp. at 13–14. But Digital Turbine did not restate AdColony or Fyber's pre-acquisition financial statements, nor could it—Digital Turbine cannot restate the financial statements of a separate company, and both AdColony and Fyber were legally separate from Digital Turbine prior to the acquisitions. *See* ¶ 5. The authority cited by Plaintiffs is therefore inapplicable because it assumes falsity based on the fact of a restatement.

*Second*, the Court can dismiss the forward-looking statements in paragraphs 106 through 108 of the Complaint concerning the future benefits of the acquisitions because they are protected by the PSLRA safe harbor and the bespeaks caution doctrine. Neither of Plaintiffs' arguments in response are persuasive. Plaintiffs are incorrect that the safe harbor and the bespeaks caution

18

doctrine cannot apply to forward-looking statements that are allegedly misleading by omission. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 483–84 (5th Cir. 2020) (applying the safe harbor in an omissions case); *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653–55 (S.D. Tex. 2016) (applying the bespeaks caution doctrine in an omissions case).  Plaintiffs' argument that Digital Turbine's risk disclosures were "boilerplate" fails because the disclosures speak to the exact issues that occurred in this case—accounting changes due to deficiencies in the financial operations of the acquired companies that Digital Turbine did not identify in advance.[6]

*Third*, the statements in paragraphs 106, 108, and 112 of the Complaint are vague statements of corporate optimism, and not "concrete" factual representations as Plaintiffs claim. *See* Opp. at 15–16.  Descriptions of a "strategic transaction" (¶ 106), accelerated growth (¶ 106), and "revenue synergies" (¶ 108) and an "important puzzle piece" (¶ 112) are not factual representations that could be proven "right" or "wrong."  *See In re MCI Worldcom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778, 785–86 (S.D. Miss. 2002) (dismissing similar statements as immaterial puffery).  The only case that Plaintiffs cite did not involve a puffery argument by Defendants.  *See In re Comput. Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999).

IV.    **The Complaint does not sufficiently allege loss causation.**

Plaintiffs allege a corrective disclosure theory of loss causation based on two statements by Digital Turbine: the May 17, 2022 announcement of the accounting restatements (¶¶ 187–188)

---

[6] *See* Digital Turbine's Form 10-K filed June 2, 2020, at 14 ("[W]e may discover liabilities or deficiencies that we did not identify in advance associated with the companies or assets we acquire. The effectiveness of our due diligence with respect to acquisitions, and our ability to evaluate the results of such due diligence, is dependent upon the accuracy and completeness of statements and disclosures made or actions taken by the companies we acquire or their representatives. We may also fail to accurately forecast the financial impact of an acquisition transaction, including accounting charges.").    The version on file with the SEC can be viewed at https://www.sec.gov/Archives/edgar/data/317788/000162828020008824/fy2020form10-k.htm.

19

and the May 31, 2022 earnings release announcing Digital Turbine's financial results for the fourth quarter of 2022 (¶¶ 191–192). Plaintiffs have not pleaded loss causation for two reasons.

*First*, the May 31, 2022 statement is not a corrective disclosure because it did not announce any new information to the market related to the challenged statements. The market was already aware of the restatements based on the May 17, 2022 announcement and the only "new" information in the May 31, 2022 earnings release, about Digital Turbine's disappointing fourth quarter 2022 results, is not related to the challenged statements. Plaintiffs' opposition attempts to bootstrap the loss causation paragraphs in the Complaint by reference to other sections of the Complaint, but the loss causation paragraphs in question discuss only Digital Turbine's fourth quarter 2022 results. *See* ¶¶ 191–192.

*Second*, neither the May 17, 2022 or May 31, 2022 statements are corrective disclosures as to the statements Plaintiffs challenge regarding AdColony and Fyber's pre-acquisition financial results because the disclosures did not address the same subjects as the challenged statements. The forward-looking statements and immaterial puffery in paragraphs 106 through 113 were based on AdColony and Fyber's pre-acquisition financial results, which Digital Turbine did not restate.

## V.    The Section 20(a) claim fails for lack of a primary violation of the securities laws.

The Exchange Act Section 20(a) claim in the Complaint can proceed only where the Court finds a primary violation of the securities laws. *Southland*, 365 F. 3d at 383. Plaintiffs have failed to state a primary violation of Section 10(b), and the Court must therefore dismiss the Section 20(a) claim.

## CONCLUSION

For the reasons stated herein, Defendants ask the Court to dismiss Plaintiffs' Complaint.

20

Dated: July 3, 2023

Respectfully submitted,

*/s/ Michael J. Biles*

**KING & SPALDING LLP**
Paul R. Bessette, Texas Bar No. 02263050
Michael J. Biles, Texas Bar No. 24008578
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
Email: pbessette@kslaw.com
Email: mbiles@kslaw.com

*Counsel for Defendants Digital Turbine, Inc.,*
*William Stone, and Barrett Garrison*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, July 3, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Michael J. Biles*
Michael J. Biles
