# Exhibit 26

# UNITED STATES

# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

# FORM 10-K

**(Mark One)**

☒     **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2021**

**OR**

☐     **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For transition period from        to**

**Commission File Number 001-40325**

# AppLovin Corporation

(Exact name of registrant as specified in its charter)

| **Delaware** | **45-3264542** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**1100 Page Mill Road**
**Palo Alto, California 94304**
(Address of registrant's principal executive offices, including zip code)
**(800) 839-9646**
(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| **Title of each class** | **Trading Symbol** | **Name of each exchange on which registered** |
|---|---|---|
| Class A common stock, par value $0.00003 per share | APP | The Nasdaq Stock Market LLC |

**Securities registered pursuant to Section 12(g) of the Act: <u>None</u>**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐ No ☒

Table of Contents

**Critical Accounting Policies and Estimates**

We believe that the following accounting policies involve a high degree of judgment and complexity and are critical to understanding and evaluating our consolidated financial condition and results of our operations. An accounting policy is considered to be critical if it requires judgment on a significant accounting estimate to be made based on assumptions about matters that are uncertain at the time the estimate is made, and if different estimates that reasonably could have been used, or changes in the accounting estimates that are reasonably likely to occur periodically, could materially impact the reported amounts of assets, liabilities, revenue and expenses, and related disclosures in our audited consolidated financial statements. We have based our estimates on historical experience and on various other assumptions that are believed to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Although we believe that the estimates we use are reasonable, due to the inherent uncertainty involved in making those estimates, actual results reported in future periods could differ from those estimates.

We believe that the following critical accounting policies reflect the more significant judgments, estimates and assumptions used in the preparation of our consolidated financial statements. See Note 2 to our consolidated financial statements included elsewhere in this Annual Report on Form 10-K for additional information.

### *Revenue from Contracts with Customers*

We generate revenue from two types of customers—Business and Consumer. Business Revenue includes fees paid by mobile app advertisers that use our Software Platform, and revenue generated from the sale of digital advertising inventory of our Apps. Consumer Revenue consists of IAPs made by users within our Apps.

### *Business Revenue*

Our Software Platform provides the technology to match advertisers and third-party owners of digital advertising inventory via auctions at large scale and microsecond-level speeds. The pricing and terms for all mobile advertising arrangements are governed by our terms and conditions and generally stipulate payment terms of 30 days subsequent to the end of the month. The contract is fully cancellable at any time.

For Business Revenue generated through the placement of advertisements on mobile game apps owned by publishers, our performance obligation is to provide an advertiser with access to our Software Platform which facilitates the advertiser's purchase of advertising inventory from publishers. We do not control the advertising inventory prior to its transfer to the advertiser, our customer, because we do not have the substantive ability to direct the use of, nor obtain substantially all of the remaining benefits from, the advertising inventory. We are not primarily responsible for fulfillment and do not have any inventory risk. We are an agent as it relates to the sale of third-party advertising inventory and present revenue on a net basis. The transaction price is the product of either the number of completions of agreed upon actions or advertisements displayed and the contractually agreed upon price per advertising unit with the advertiser less consideration paid or payable to publishers.

Advertisers also purchase the advertising inventory of our Apps either through our Software Platform or through third-party advertising networks. Revenue from the sale of advertising inventory through third-party advertising networks is recognized net of the amounts retained by third-party advertising networks as we are unable to determine the gross amount paid by the advertisers to the third-party advertising networks.

We recognize mobile advertising revenue when the agreed upon action is completed or when the ad is displayed to users, depending on the agreed upon pricing mechanism with an advertiser or third- party advertising network. The number of advertisements delivered and completions of agreed upon actions is determined at the end of each month, which resolves any uncertainty in the transaction price during the reporting period.

### *Consumer Revenue*

IAPs include fees collected from users for the purchase of virtual goods to enhance their gameplay experience. The identified performance obligation is to provide users with the ability to acquire, use, and hold virtual items over the estimated period of time the virtual items are available to the user or until the virtual item is consumed. We categorize our virtual goods as either consumable or durable. Consumable virtual goods represent goods that can be consumed by a specific player action in gameplay; accordingly, we recognize revenue from the sale of consumable virtual goods as the goods are consumed and our performance obligation is satisfied. Durable virtual goods represent goods that are accessible to the user over an extended period of time; accordingly, we recognize revenue from the sale of durable virtual goods ratably over the period of time the goods are available to the user and our performance obligation is satisfied, which is generally the estimated average user life (EAUL). Payment is required at the time of purchase and the purchase price is a fixed amount. Users make IAPs through our distribution partners. The transaction price is equal to the gross amount charged to users because we are the principal in the transaction. IAPs fees are non-refundable. Such payments are initially recorded to deferred revenue.

Table of Contents

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Date: March 11, 2022

**APPLOVIN CORPORATION**

By: /s/ Adam Foroughi

Adam Foroughi

Chief Executive Officer

**POWER OF ATTORNEY**

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Adam Foroughi, Herald Chen and Victoria Valenzuela, and each one of them, as their true and lawful attorneys-in-fact and agents, with full power of substitution and resubstitution, for them and in their name, place and stead, in any and all capacities, to sign any and all amendments to this Annual Report on Form 10-K, and to file the same, with all exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents, and each of them, full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection therewith, as fully to all intents and purposes as they might or could do in person, hereby ratifying and confirming all that said attorneys-in-fact and agents or any of them, or their substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ Adam Foroughi<br>Adam Foroughi | Chief Executive Officer and Chairperson<br>*(Principal Executive Officer)* | March 11, 2022 |
| /s/ Herald Chen<br>Herald Chen | Chief Financial Officer, President, and Director<br>*(Principal Financial Officer)* | March 11, 2022 |
| /s/ Elena Arutunian<br>Elena Arutunian | Chief Accounting Officer<br>*(Principal Accounting Officer)* | March 11, 2022 |
| /s/ Craig Billings<br>Craig Billings | Director | March 11, 2022 |
| /s/ Margaret Georgiadis<br>Margaret Georgiadis | Director | March 11, 2022 |

125

Table of Contents

| Signature | Title | Date |
|---|---|---|
| /s/ Alyssa Harvey Dawson | | |
| Alyssa Harvey Dawson | Director | March 11, 2022 |
| /s/ Edward Oberwager | | |
| Edward Oberwager | Director | March 11, 2022 |
| /s/ Asha Sharma | | |
| Asha Sharma | Director | March 11, 2022 |
| /s/ Eduardo Vivas | | |
| Eduardo Vivas | Director | March 11, 2022 |

126