# Exhibit 27



# Fyber N.V.

**Annual Report 2019**



# Introduction

| | |
|---|---|
| Highlights & Key Figures | 06 |
| Letter from the CEO | 08 |
| Letter from the Supervisory Board | 10 |
| Powering Digital Advertising | 12 |

# Report of the Management Board

| | |
|---|---|
| Business Model | 17 |
| Market Update | 22 |
| Business Performance | 24 |
| Forecast Report | 28 |
| Subsequent Events | 30 |
| Risk Management | 32 |
| Remuneration Report | 48 |
| Personnel Report | 54 |
| Equity Information | 56 |
| Responsibility Statement | 57 |



# Corporate Governance Report

| | |
|---|---|
| Introduction & Company Structure | 59 |
| Corporate Governance Approach | 60 |
| The Management Board | 62 |
| The Supervisory Board & Report of the Supervisory Board | 66 |
| Shares & Shareholders | 74 |
| Independent External Auditor | 76 |
| Compliance with the Dutch Corporate Governance Code | 78 |
| Corporate Governance Statement | 79 |



# Financial Statements

| | |
|---|---|
| Consolidated Financial Statements 2019 | 81 |
| Notes to the Consolidated Financial Statements | 90 |
| Company Financial Statements 2019 | 146 |
| Notes to the Company Financial Statements | 156 |
| Independent Auditor's Report | 174 |

# Other Information

| | |
|---|---|
| Financial Calendar | 187 |
| Editorial | 187 |



Case 1:22-cv-00550-DAE   Document 61-6   Filed 09/22/23   Page 3 of 10



# Independent auditor's report

To: the Annual meeting of Shareholders and the Supervisory Board of Fyber N.V.

## Report on the audit of the financial statements 2019 included in the annual report

### Our opinion

In our opinion the accompanying financial statements give a true and fair view of the financial position of Fyber N.V. as at 31 December 2019 and of its result and its cash flows for the year then ended, in accordance with International Financial Reporting Standards as adopted by the European Union (EU-IFRS) and with Part 9 of Book 2 of the Dutch Civil Code.

### What we have audited

We have audited the financial statements 2019 of Fyber N.V. (hereafter: "the Company") based in Amsterdam, the Netherlands.

The financial statements comprise:

1 the consolidated and company statement of financial position as at 31 December 2019;

2 the following consolidated and company statements for 2019: the income statement, the statement of other comprehensive income, the statement of changes in equity and cash flows; and

3 the notes comprising a summary of the significant accounting policies and other explanatory information.

### Basis for our opinion

We conducted our audit in accordance with Dutch law, including the Dutch Standards on Auditing. Our responsibilities under those standards are further described in the 'Our responsibilities for the audit of the financial statements' section of our report.

We are independent of Fyber N.V. in accordance with the 'Verordening inzake de onafhankelijkheid van accountants bij assurance-opdrachten' (ViO, Code of Ethics for Professional Accountants, a regulation with respect to independence) and other relevant independence regulations in the Netherlands. Furthermore, we have complied with the 'Verordening gedrags- en beroepsregels accountants' (VGBA, Dutch Code of Ethics).

We believe the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion.

### Material uncertainty related to going concern

We draw attention to the paragraph Going Concern (note 1.3) in the notes of the financial statements which indicates that the Company depends on future positive cash flows and the willingness of the lenders to continue financing the Company. This could further be negatively impacted by the uncertainties caused by COVID-19. These conditions indicate the existence of a material uncertainty which may cast doubt about the Company's ability to continue as a going concern. Our opinion is not modified in respect of this matter.

Uncertainties related to the potential effects of COVID-19 are relevant to understanding our audit of the consolidated financial statements. All audits assess and challenge the reasonableness of estimates made by companies, the related disclosures and the appropriateness of the going concern assumption of financial statements. The appropriateness of the going concern assumption depends on assessments of the future economic environment and the company's future prospects and performance. The COVID-19 pandemic is an unprecedented challenge for humanity and for the economy globally, and at the date of this report its effects are subject to significant levels of uncertainty. We have evaluated the situation and uncertainties as described in the aforementioned disclosure and consider the disclosure to be adequate. However, an audit cannot predict the unknowable factors or all possible future implications for a company and this is particularly the case in relation to COVID-19.

### Audit approach

#### Summary

| Materiality |
| --- |
| — Materiality of EUR 720 thousand for the consolidated financial statements |
| — 0.6% of total revenue |
| — 0.2% of total assets |
| — Materiality of EUR 525 thousand for the company financial statements |

| Group audit |
| --- |
| — 98% of total assets |
| — 97% of total revenue |

| Key audit matters |
| --- |
| — Impairment testing on goodwill |
| — Convertible bonds accounting treatment |
| — Fraudulent revenue recognition |

| Opinion |
| --- |

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.



Unqualified opinion with material uncertainty related to going concern

### Materiality

Based on our professional judgement we determined the materiality for the consolidated financial statements as a whole at EUR 720 thousand and for the company financial statements as a whole at EUR 525 thousand.

The materiality for the consolidated financial statements is determined with reference to total revenue (0.6%). We consider total revenue as the most appropriate benchmark because the main focus of stakeholders is, amongst other metrics, on revenue. Moreover revenue appears to be more appropriate as this benchmark is less volatile than profit before tax.

The materiality for the company financial statements is determined with reference to total assets (0.2%). We consider total assets as the most appropriate benchmark because the main focus of stakeholders is, amongst other metrics, on total assets due to the holding and finance activities of the parent company.

We have also taken into account misstatements and/or possible misstatements that in our opinion are material for the users of the consolidated and company financial statements for qualitative reasons.

We agreed with the Management Board that unadjusted misstatements in excess of EUR 36 thousand and EUR 26 thousand which are identified during the audit of the consolidated and company financial statements respectively, would be reported to them, as well as smaller misstatements that in our view must be reported on qualitative grounds.

### Scope of the group audit

Fyber N.V. is at the head of a group of components. The financial information of this group is included in the financial statements of Fyber N.V.

Our group audit mainly focused on significant components (namely Fyber Monetization Ltd., Fyber Media GmbH and Fyber GmbH) that are (i) of individual financial significance to the group, and (ii) that, due to their specific nature or circumstances, are likely to include significant risks of material misstatement of the financial statements of Fyber N.V. At these significant components we performed audits for group reporting purposes on a complete set of financial information.

We have:

— Used the work of KPMG Israel and KPMG Germany for the audit of Fyber Monetization Ltd., Fyber Media GmbH and Fyber GmbH.

— Set component materiality levels, which ranged from EUR 158 thousand to EUR 532 thousand, based on the mix of size and risk profile of the components within the group to reduce the aggregation risk to an acceptable level

— Provided detailed instructions to the component auditors, covering amongst others the significant risks of material misstatement, and the information required to be reported back to the group audit team.

— For the significant components in scope of the group audit, held conference calls and physical meetings with the auditor of the significant components. During these meetings and calls, the planning, risk assessment, procedures performed, findings and observations reported to the group auditor were discussed in more detail and any further work deemed necessary by the group audit team was then performed.

— Reviewed the work performed by KPMG component auditors in our group audit file.

— Performed selected audit procedures ourselves at Fyber N.V. with respect to compliance with specific Dutch disclosure requirements and those related to communication to those charged with governance.

This resulted in an audit coverage of 98% of total assets and 97% of total revenues.

For the remaining components, we performed analytical procedures at the aggregated group level in order to corroborate our assessment that there are no risks of material misstatements within these remaining group entities.

By performing the procedures mentioned above at significant components, together with additional procedures at group level, we have been able to obtain sufficient and appropriate audit evidence about the group's financial information to provide an opinion about the financial statements.

### Audit scope in relation to fraud

In accordance with the Dutch standards on auditing we are responsible for obtaining a high (but not absolute) level of assurance that the financial statements taken as a whole are free from material misstatement, whether caused by fraud or error.

As part of our risk assessment process we have evaluated events or conditions that indicate an incentive or pressure to commit fraud or provide an opportunity to commit fraud ('fraud risk factors') to determine whether fraud risks are relevant to our audit. During this risk assessment we made use of our own forensic specialist.

We communicated identified fraud risks throughout our team and remained alert to any indications of fraud throughout the audit. This included communication from the group to component audit teams of relevant fraud risks identified at group level.

In accordance with the auditing standard we evaluated the fraud risks that are relevant to our audit:

— Fraud risk in relation to revenue recognition, being the risk with respect to an overstatement of revenues throughout the year and during the cut-off period close to the financial year-end (the presumed risk).

— Fraud risk in relation to management override of controls to meet targets and/or expectations (the presumed risk).

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

Our audit procedures included an evaluation of the design and implementation of internal controls relevant to mitigate these risks and substantive audit procedures, including detailed testing of high risk journal entries and evaluation of management bias, such as estimates relating to goodwill impairment testing. In determining the audit procedures we made use of the Company's evaluation in relation to fraud risk management (prevention, detections and response), including the set-up of ethical standards to create a culture of honesty. Furthermore, in relation to the correct recognition of revenues throughout the year and for the period close to the financial year-end, we carried out inspection and testing of documentation such as contracts with customers and credit notes.

As part of our evaluation of any instances of fraud, we inspected the incident register/whistle blowing reports and follow up by management.

We communicated our risk assessment and audit response to the Management Board and the Supervisory Board. Our audit procedures differ from a specific forensic fraud investigation, which investigation often has a more in-depth character.

Our procedures to address fraud risks did result in a key matter. We refer to the key audit matter related to fraudulent revenue recognition.

We do note that our audit is based on the procedures described in line with applicable auditing standards and are not primarily designed to detect fraud.

### *Audit scope in relation to non-compliance with laws and regulations*

We have evaluated facts and circumstances in order to assess laws and regulation relevant to the Company. In this evaluation we made use of our own forensic specialist.

We identified laws and regulations that could reasonably be expected to have a material effect on the financial statements based on our general understanding and sector experience, through discussion with relevant management and evaluating the policies and procedures regarding compliance with laws and regulations.

We communicated identified laws and regulations throughout our team and remained alert to any indications of non-compliance throughout the audit. This included communication from the group to component audit teams of relevant laws and regulations identified at group level. The potential effect of these laws and regulations on the financial statements varies considerably:

— Firstly, the Company is subject to laws and regulations that directly affect the financial statements including taxation and financial reporting (including related company legislation). We assessed the extent of compliance with these laws and regulations as part of our procedures on the related financial statement items.

— Secondly, the Company is subject to many other laws and regulations where the consequences of non-compliance could have an indirect material effect on amounts recognized or disclosures provided in the financial statements, or both, for instance through the imposition of fines or litigation.

Based on the nature of operations and their geographical spread, the areas that we identified as those most likely having such an indirect effect include laws and regulations regarding the data privacy.

Auditing standards limit the required audit procedures to identify non-compliance with laws and regulations that have an indirect effect to inquiring of relevant management and inspection of regulatory and legal correspondence, if any. Through these procedures, we did not identify any additional actual or suspected non-compliance other than those previously identified by the Company in the above mentioned area. We considered the effect of actual or suspected non-compliance as part of our procedures on the related financial statement items.

Our procedures to address compliance with laws and regulations did not result in the identification of a key audit matter.

We do note that our audit is not primarily designed to detect non-compliance with laws and regulations and that management is responsible for such internal control as management determines is necessary to enable the preparation of the financial statements that are free from material misstatement, whether due to errors or fraud, including compliance with laws and regulations.

The more distant non-compliance with indirect laws and regulations (irregularities) is from the events and transactions reflected in the financial statements, the less likely the inherently limited procedures required by auditing standards would identify it. In addition, as with any audit, there remained a higher risk of non-detection of irregularities, as these may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal controls.

### *Our key audit matters*

Key audit matters are those matters that, in our professional judgement, were of most significance in our audit of the financial statements. We have communicated the key audit matters to the Management Board and Supervisory Board. The key audit matters are not a comprehensive reflection of all matters discussed.

These matters were addressed in the context of our audit of the financial statements as a whole and in forming our opinion thereon, and we do not provide a separate opinion on these matters.

#### Impairment testing on goodwill

**Description**

As indicated in note 18, the carrying value of goodwill as at 31 December 2019 amounts to EUR 134.9 million. The goodwill resulted from the acquisition of four platform businesses between 2014 and 2016. The goodwill relates to one cash generating unit (CGU) only.

Under IFRS–EU the Company is required to test the amount of goodwill for impairment at least annually. The impairment tests were significant to our audit due to the complexity of the

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.



assessment process, judgements and key input assumptions involved which are affected by expected future market and economic developments.

### Our response

We evaluated the design and implementation of controls with respect to management's impairment testing process.

We challenged the CGU definition, cash flow projections included in the annual goodwill impairment test and assessed the appropriateness of this and other data used by comparing them to external and historical data, such as external market growth expectations, and by analysing sensitivities in Fyber valuation model.

Our audit procedures included the involvement of a valuation specialist to assist us in evaluating the assumptions, in particular the (terminal) growth and pre-tax discount rates, and the valuation methodology and model used by Fyber.

We applied sensitivity analysis and assessed possible biases of management, challenged the overall outcome and consistency and the historical accuracy of management's estimates and retrospective review procedures.

We assessed the adequacy of the disclosure in note 18 to the consolidated financial statements.

### Our observation

We consider management's key assumptions and estimates to be within the acceptable range and we assessed that the disclosure in note 18 meets the requirements of EU-IFRS.

**Convertible bonds accounting treatment**

### Description

As indicated in notes 5 and 28, in order to restructure the company's financing position, the company converted EUR 72 million of convertible bonds (carrying amount) outstanding as at 31 December 2019 into equity. This conversion significantly impacted equity (EUR 95 million increase) and resulted in a financial expense of EUR 23 million.

Subsequent to this conversion certain terms of the remaining (not converted) bond were amended which resulted in the modification of these remaining bonds. This modification resulted in a financial income of EUR 7 million .

The accounting of the convertible bonds and in particular the modification of the terms of the remaining (not converted) bonds was significant to our audit because of the complexity of the applied derecognition accounting of IFRS 9 financial instruments which includes significant judgments by management.

### Our response

We evaluated the design and implementation of controls with respect to management's accounting process for the conversion of the bonds.

We obtained an understanding of the conversion and the modification accounting applied by management and obtained the approval of the bondholders and shareholders' meetings.

Our audit procedures on the conversion included, amongst others, reconciliations with the underlying convertible bonds agreement, recalculation of the financial expense resulting from the conversion and reconciliation with underlying audit evidence.

Our audit procedures on the modification accounting included, amongst others, the involvement of a financial instrument specialist to assist us in evaluating the key assumptions and estimates of management. We evaluated the appropriateness of the implementation of the quantitative and qualitative indicators based on the derecognition requirements of IFRS 9. We considered whether management judgements relating to these quantitative and qualitative indicators gave rise to any indicators of management bias.

We evaluated the completeness, accuracy and relevance of data used in calculating the quantitative indicators by assessing the model and key inputs used, and performing a recalculation.

We assessed the adequacy of the disclosures in notes 5 and 28 to the consolidated financial statements.

### Our observation

We consider management's key assumptions and estimates to be within the acceptable range and we assessed that the disclosures in notes 5 and 28 meet the requirements of EU-IFRS.

**Fraudulent revenue recognition**

### Description

Based on the business environment there is a pressure to meet the requirements of third parties, to achieve bank covenant ratios, results and financial (incentive) targets. In addition the major revenue generating business processes are mainly based on manual interfaces between the IT systems leading to an opportunity to manipulate revenue.

Revenue recognition was significant to our audit because of the fraud risk relating to the existence of the revenue recognized.

### Our response

We evaluated the design and implementation of relevant anti-fraud revenue controls.

Our substantive audit procedures included, amongst other, detailed testing of high risk journal entries and evaluation of management bias.

In response to the risk of overstatement of revenue we selected and reconciled sales transactions with supporting source documentation such as customer contracts. We inspected

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.



the sales contracts to determine whether significant risks and rewards were transferred in the current year. In addition we tested whether revenue was appropriately recognized by performing credit note testing after year-end.

Furthermore we evaluated the revenue reconciliations between the IT systems which management performed, and assessed the differences resulting from these reconciliations by inspecting supporting documentation.

### Our observation

The results of our procedures relating to the risk of fraudulent revenue recognition were satisfactory.

## Report on the other information included in the annual report

In addition to the financial statements and our auditor's report thereon, the annual report contains other information.

Based on the following procedures performed, we conclude that the other information:

— is consistent with the financial statements and does not contain material misstatements; and

— contains the information as required by Part 9 of Book 2 of the Dutch Civil Code.

We have read the other information. Based on our knowledge and understanding obtained through our audit of the financial statements or otherwise, we have considered whether the other information contains material misstatements.

By performing these procedures, we comply with the requirements of Part 9 of Book 2 of the Dutch Civil Code and the Dutch Standard 720. The scope of the procedures performed is less than the scope of those performed in our audit of the financial statements.

The Management Board is responsible for the preparation of the other information, including the information as required by Part 9 of Book 2 of the Dutch Civil Code.

## Report on other legal and regulatory requirements

### Engagement

We were engaged by the Annual meeting of Shareholders as auditor of Fyber N.V. on 12 June 2019 as of the audit for the year 2019 and have operated as statutory auditor ever since that financial year.

### No prohibited non-audit services

We have not provided prohibited non-audit services as referred to in Article 5 (1) of the EU Regulation on specific requirements regarding statutory audits of public-interest entities.

## Description of responsibilities regarding the financial statements

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.



### Responsibilities of the Management Board for the financial statements

The Management Board is responsible for the preparation and fair presentation of the financial statements in accordance with EU-IFRS and Part 9 of Book 2 of the Dutch Civil Code. Furthermore, The Management Board is responsible for such internal control as management determines is necessary to enable the preparation of the financial statements that are free from material misstatement, whether due to fraud or error.

As part of the preparation of the financial statements, the Management Board is responsible for assessing the Company's ability to continue as a going concern. Based on the financial reporting frameworks mentioned, the Management Board should prepare the financial statements using the going concern basis of accounting unless the Management Board either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so. The Management Board should disclose events and circumstances that may cast significant doubt on the Company's ability to continue as a going concern in the financial statements.

The Supervisory Board is responsible for overseeing the Company's financial reporting process.

### Our responsibilities for the audit of the financial statements

Our objective is to plan and perform the audit engagement in a manner that allows us to obtain sufficient and appropriate audit evidence for our opinion.

Our audit has been performed with a high, but not absolute, level of assurance, which means we may not detect all material errors and fraud during our audit.

Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements. The materiality affects the nature, timing and extent of our audit procedures and the evaluation of the effect of identified misstatements on our opinion.

A further description of our responsibilities for the audit of the financial statements is included in the appendix of this auditor's report. This description forms part of our auditor's report.

Amstelveen, 30 April 2020

KPMG Accountants N.V.

A.P.A. Greebe RA

Appendix:
Description of our responsibilities for the audit of the financial statements

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

**KPMG**

## Appendix

### Description of our responsibilities for the audit of the financial statements

We have exercised professional judgement and have maintained professional skepticism throughout the audit, in accordance with Dutch Standards on Auditing, ethical requirements and independence requirements. Our audit included among others:

— identifying and assessing the risks of material misstatement of the financial statements, whether due to fraud or error, designing and performing audit procedures responsive to those risks, and obtaining audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than the risk resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control;

— obtaining an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control;

— evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by the Management Board;

— concluding on the appropriateness of Management Board' use of the going concern basis of accounting, and based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause a company to cease to continue as a going concern;

— evaluating the overall presentation, structure and content of the financial statements, including the disclosures; and

— evaluating whether the financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

We are solely responsible for the opinion and therefore responsible to obtain sufficient appropriate audit evidence regarding the financial information of the entities or business activities within the group to express an opinion on the financial statements. In this respect we are also responsible for directing, supervising and performing the group audit.

We communicate with the Supervisory Board regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant findings in internal control that we identify during our audit. In this respect we also submit an additional report to the audit committee in accordance with Article 11 of the EU Regulation on specific

requirements regarding statutory audits of public-interest entities. The information included in this additional report is consistent with our audit opinion in this auditor's report.

We provide the Supervisory Board with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with the Supervisory Board, we determine the key audit matters: those matters that were of most significance in the audit of the financial statements. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, not communicating the matter is in the public interest.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

KPMG Accountants N.V., registered with the trade register in the Netherlands under number 33263683, is a member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ('KPMG International'), a Swiss entity.

# Fyber N.V.

Annual Report 2019