# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **IN RE DIGITAL TURBINE, INC. SECURITIES LITIGATION** | Case No. 1:22-cv-00550-DAE |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | |

**TABLE OF CONTENTS**

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 2

I.      Plaintiffs do not plead facts raising a strong inference of scienter. .................................. 2

        A.      The SAC does not allege a plausible motive. ......................................................... 2

                1.      The stock sale allegations do not demonstrate a plausible motive. ............ 3

                2.      The terms of the Fyber acquisition do not show a plausible motive. ......... 5

        B.      The SAC does not raise a strong inference of intent to deceive or severe
                recklessness. ...................................................................................................... 6

                1.      The circumstances of the restatements do not raise a strong inference
                        of scienter. ................................................................................................. 7

                2.      Publicly available information about Fyber does not raise a strong
                        inference of scienter. .................................................................................. 9

                3.      Investor presentations do not raise a strong inference of scienter. ........... 10

                4.      The CAO allegations do not raise a strong inference of scienter. ............ 11

                5.      The SAC does not allege a duty to monitor. .............................................. 11

                6.      Analyst estimates do not raise an inference of scienter. ........................... 12

        C.      The opposing inferences in Defendants' favor are overwhelming. ...................... 12

II.     Plaintiffs do not allege that Stone's February 8, 2022 statements were materially false
        or misleading. ................................................................................................................ 13

III.    The SAC does not sufficiently allege loss causation as to the May 31, 2022
        disclosure. ..................................................................................................................... 13

IV.     Plaintiffs do not allege scheme liability. ......................................................................... 14

Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes, Inc.*,
292 F.3d 424 (5th Cir. 2002) ...................................................................................................3

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) .....................................................................................12

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
915 F.3d 975 (5th Cir. 2019) .................................................................................................10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004).....................................................................................12

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010).....................................................................................7

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) ...........................................................................................4, 7, 8

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) .......................................................................................8

*Catogas v. Cyberonics, Inc.*,
292 F. App'x 311 (5th Cir. 2008) ...........................................................................................14

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
497 F.3d 546 (5th Cir. 2007) ...................................................................................................3

*Coates v. Heartland Wireless Commc'ns, Inc.*,
55 F. Supp. 2d 628 (N.D. Tex. 1999) .......................................................................................6

*Collmer v. U.S. Liquids, Inc.*,
268 F. Supp. 2d 718 (S.D. Tex. 2001) .....................................................................................6

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
504 F. Supp. 2d 151 (N.D. Tex. 2007) .....................................................................................3

*Davis v. DRRF Tr.*
*2015-1*, No. 5:15-CV-880 RP, 2016 WL 8257126 (W.D. Tex. Jan. 6, 2016)........................11

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008).....................................................................................7

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
No. CIVA503MD1530TJW, 2004 WL 5278716 (E.D. Tex. June 16, 2004)........................11

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)...................................................................................5

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) .................................................................................15

*In re Integrated Elec. Servs., Inc. Sec. Litig.*,
No. 4:04-CV-3342, 2006 U.S. Dist. LEXIS 1425 (S.D. Tex. Jan. 10, 2006)...........................9

*Lemmer v. Nu-Kote Holding, Inc.*,
No. 3:98-CV-0161-L, 2001 U.S. Dist. LEXIS 13978 (N.D. Tex. Sep. 6, 2001).......................5

*Local 731 I.B. of T.Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
810 F.3d 951 (5th Cir. 2016) ..............................................................................................2

*Macovski v. Groupon, Inc.*,
553 F. Supp. 3d 460 (N.D. Ill. 2021) ...................................................................................5

*Mendi Yoshikawa v. Exxon Mobil Corp.*,
Civ. A. No. 3:21-CV-00194-N, 2022 U.S. Dist. LEXIS 178454 (N.D. Tex.
Sept. 29, 2022) ....................................................................................................................3

*Microcapital Fund LP v. Conn's Inc.*,
No. 4:18-cv-1020, 2019 U.S. Dist. LEXIS 127748 (S.D. Tex. July 24, 2019) ........................4

*Norfolk County Retirement System v. Ustian*,
No. 07C7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) ....................................................9

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) ..............................................................................................7

*Patel v. L-3 Commc'ns Holdings Inc.*,
14-cv-6038, 2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) ....................................................11

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) .......................................................................................13

*Reiger v. Pricewaterhousecoopers LLP*,
117 F. Supp. 2d 1003 (S.D. Cal. 2000)................................................................................12

*SEC v. World Tree Fin., L.L.C.*,
43 F.4th 448 (5th Cir. 2022) ..............................................................................................10

iii

*Stockman v. Flotek Indus.*,
   Civ. A. No. H-09-2526, 2010 U.S. Dist. LEXIS 103196 (S.D. Tex. Sep. 29,
   2010) ...................................................................................................................4, 5

*Tuchman v. DSC Commc'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994) .............................................................................6

*In re Tupperware Brands Corp. Sec. Litig.*,
   No. 6:20-cv-357-Orl-31GJK, 2021 U.S. Dist. LEXIS 13632 (M.D. Fla. Jan.
   25, 2021) ...........................................................................................................15

*United States SEC v. Silea*,
   No. 4:20-CV-737-SDJ, 2022 U.S. Dist. LEXIS 15101 (E.D. Tex. Jan. 27,
   2022) .................................................................................................................14

*In re Urban Outfitters, Inc. Sec. Litig.*,
   103 F. Supp. 3d 635 (E.D. Pa. 2015) ..................................................................9

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)..................................................................................2

Private Securities Litigation Reform Act..............................................................1

**Other Authorities**

Rule 10b-5(a) and (c) ..........................................................................................14

Rule 10b-5(b) ......................................................................................................14

**INTRODUCTION**

Three strikes and you're out.  The Court should dismiss the Second Amended Complaint ("SAC") because Plaintiffs have had three opportunities to plead their case and have failed each time to allege securities fraud sufficient to meet to the heightened pleading standard set by the Private Securities Litigation Reform Act ("PSLRA").  Plaintiffs once again allege no more than fraud by hindsight: they start with Defendant Digital Turbine's May 17, 2022 announcement that it would restate prior financials for three quarters due to revenue recognition issues at two recently acquired companies and then search backwards to find a "fraud" based on an accounting error. This is the type of abusive securities suit that the PSLRA is meant to deter and the Court should dismiss Plaintiffs' claims with prejudice.

The Court should dismiss the entire SAC for failure to allege the necessary strong inference of scienter.  There is no plausible motive and Plaintiffs do not plead any particularized facts showing that Defendants intended to deceive investors or were severely reckless with respect to Digital Turbine's revenue recognition.  There are no specific facts showing that Digital Turbine's CEO William Stone or CFO Barrett Garrison (the "Individual Defendants") knew of underlying accounting issues at two recently acquired companies, AdColony and Fyber, during the three quarters that were later restated.  The more cogent and compelling explanation for the restatements is that the accounting issues were complicated, subjective, and not discovered by Digital Turbine until months after it integrated the accounting functions of the newly acquired companies.

Plaintiffs also fail to sufficiently allege the elements of falsity and loss causation. Statements made by Defendant Stone on February 8, 2022 were immaterial puffery.  And there is no loss causation for an alleged corrective disclosure on May 31, 2023 because the disclosure did not reveal any new information to the market.

## ARGUMENT

### I.        Plaintiffs do not plead facts raising a strong inference of scienter.

Plaintiffs have the burden to "state with particularity facts giving rise to a strong inference that each defendant acted with the required state of mind" with respect to "each act or omission." 15 U.S.C. § 78u-4(b)(2)(A).    Thus, Plaintiffs must allege specific facts showing that each Defendant acted with "an intent to deceive, manipulate, defraud or severe recklessness." *Local 731 I.B. of T.Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016).  The SAC once again fails in this task.

To start, Plaintiffs fail to allege a plausible motive.  The single stock sale alleged in the SAC was not suspicious and the "acquisition" motive is illogical.  Plaintiffs also fail to plead scienter because they do not allege any well-pleaded facts showing that Defendants knew or should have known of underlying errors at AdColony and Fyber at the time of the challenged statements. There are no allegations that speak to the Individual Defendants' state of mind during the critical time period, such as allegations of meetings, internal documents, or the experiences of witnesses. Instead, Plaintiffs rely on a scattershot of irrelevant and mischaracterized information.  But as explained below, none of these allegations demonstrate an intent to deceive or severe recklessness on behalf of Defendants.

### A.        The SAC does not allege a plausible motive.

The SAC repeats the prior motive allegations about one stock sale by Defendant Stone and incentive compensation paid to Defendants Stone and Garrison.  Plaintiffs have also tacked on generic and baseless accusations about the terms of the Fyber acquisition.  Neither set of allegations shows a plausible motive for securities fraud.

### 1.  The stock sale allegations do not demonstrate a plausible motive.

The SAC repeats the stock sale allegations of the prior complaint that the Court previously rejected.  Plaintiffs' opposition offers no response to the wealth of authority showing that the circumstances of Stone's singular sale were not suspicious because he sold shares before and after the Class Period in larger amounts,[1] the sale was not a large percentage of his holdings,[2] and he retained a million-plus shares throughout the Class Period.[3]  Taken altogether, it is implausible that a CEO would engage in fraud while simultaneously holding onto 95% of his shares at the peak of the market—particularly where the other Individual Defendant, the Chief Financial Officer, did not sell any shares.[4]

The Opposition ignores these points and doubles down on the SAC's attempt to re-frame Stone's sale based on the amount of losses avoided.  The SAC alleges that the March 2022 sale occurred when Digital Turbine's stock traded at a higher-than-normal price and supposedly allowed Stone to avoid losses when the price decreased "post-Class Period."  ¶¶ 206–207. Defendants explained in their opening brief that these allegations are misleading because Stone's per-share selling price in March 2022 was less than half of Digital Turbine's Class-Period high

---

[1] *See* Dkt. 53 at 27 (holding that Stone's trade was not suspicious based on timing and pattern).

[2] *See* Dkt. 53 at 28 (noting that Stone's sales represented only 5.8% of his 1.2 million shares); *see also Mendi Yoshikawa v. Exxon Mobil Corp.*, Civ. A. No. 3:21-CV-00194-N, 2022 U.S. Dist. LEXIS 178454, at *21–22 (N.D. Tex. Sept. 29, 2022) and *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 165 (N.D. Tex. 2007) (holding that sales of greater percentages of defendants' holdings were not suspicious).

[3] *See* Dkt. 53 at 28, citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 553 (5th Cir. 2007) ("[T]he fact that Allen retained over 700,000 shares … indicates that he did not possess scienter regarding the alleged fraud, because otherwise he would have sold these shares before the price fell.").

[4] Even if the Court finds that Stone's sale was unusual, the fact that Garrison did not sell his shares negates any inference of scienter from Stone's sale.  *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 435 (5th Cir. 2002) ("[E]ven unusual sales by one insider do not give rise to a strong inference of scienter when other defendants do not sell some or all of their shares during the Class Period.").

stock price of $86.06 on October 29, 2021, and cited a case holding that a similar allegation did not raise an inference of scienter. *See Stockman v. Flotek Indus.*, Civ. A. No. H-09-2526, 2010 U.S. Dist. LEXIS 103196, at *84-85 (S.D. Tex. Sep. 29, 2010).

Instead of engaging with the applicable authority on stock sales, Plaintiffs argue Stone's mindset—which was not alleged in the SAC—and cite unrelated caselaw. Plaintiffs first claim that a CEO would sell "just enough" stock to avoid "jail." Dkt. 64 at 23. Plaintiffs then cite cases in the executive compensation context that do not discuss stock sales, and bizarrely claim that the Fifth Circuit requires the Court to view Stone's avoided losses relative to his salary. *See* Dkt. 64 at 23 (claiming that the Fifth Circuit's decisions in *Barrie* and *Six Flags* support an inference of scienter based on avoided stock sale losses). There is no reason to adopt Plaintiffs' new rule of law when the Court can rely on well-established authority to hold that Stone's lone sale was not suspicious when viewed in context.

The Opposition also fails to address the obvious flaw in the motive allegations that Defendants identify in their motion. Namely, if Plaintiffs were correct in their claim that Stone knew from the very beginning that AdColony and Fyber's revenue figures were overstated (*e.g.*, ¶ 108), the fact that Stone did not sell more shares at a higher price to maximize his profit is inconsistent with Plaintiffs' theory of fraud. *See Microcapital Fund LP v. Conn's Inc.*, No. 4:18-cv-1020, 2019 U.S. Dist. LEXIS 127748, at *39–40 (S.D. Tex. July 24, 2019) (holding that sales did not raise an inference of scienter where they did not occur "at a time when the stock price peaked"). Moreover, it is difficult to reconcile Plaintiffs' argument that Stone's March 2022 sale shows scienter because it was shortly before the restatements (*see* Dkt. 64 at 22), with the argument on the very next page that a "logical" CEO would not make insider trading too obvious (*see* Dkt.

4

64 at 23).[5]  Plaintiffs cannot have it both ways.

      **2.**        **The terms of the Fyber acquisition do not show a plausible motive.**

The SAC also tries to gin up motive by claiming that Defendants were "highly motivated to boost the value of Digital Turbine's stock to complete the Fyber acquisition" and made misrepresentations in April and May 2021 about AdColony and Fyber's revenue and growth to inflate Digital Turbine's stock price.  Dkt. 64 at 20. This motive is implausible for three reasons.

*First*, the alleged motive is generic.  Plaintiffs claim that Defendants misrepresent the *Lemmer* decision, but it is on-point: "Many corporations . . . use their own stock in making such acquisitions; thus, they would share the motive attributed to Defendants."  *Lemmer v. Nu-Kote Holding, Inc.*, No. 3:98-CV-0161-L, 2001 U.S. Dist. LEXIS 13978, at *37 (N.D. Tex. Sep. 6, 2001).  Plaintiffs make much of *Lemmer*'s dicta discussion of when stock acquisition allegations could establish motive, but they ignore the facts of this case.  The Fyber acquisition was not solely completed through stock—Digital Turbine also paid $150 million in cash. ¶ 212.  This also distinguishes the other case that Plaintiffs cite, where the acquisition was made solely with stock.  *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 554 (S.D.N.Y. 2017) (explaining that the "form of the all-stock acquisition" established a plausible motive).

*Second*, Plaintiffs' accusation depends on facts that are not specifically alleged in the SAC.

---

[5] The Court can also reject this argument because Plaintiffs do not allege any particularized facts showing what Stone knew at the time of the March 2022 sale.  *See Stockman*, 2010 U.S. Dist. LEXIS 103196, at *84–85.  The Opposition claims that it is entitled to an inference that the Company's review of revenue accounting "began in January 2022" and "was well underway" by March 2022 based on Digital Turbine's 2022 10-K.  Dkt. 64 at 22 n.14.  The 10-K does not say that the review happened in the fourth quarter of 2022, it says that the Company determined during the fourth quarter that "*it would be necessary to complete* a more comprehensive review of revenue accounting for the recently acquired businesses." ¶ 71 (emphasis added).  This is distinct from the case cited by Plaintiffs, *Macovski v. Groupon, Inc.*, 553 F. Supp. 3d 460, 475 (N.D. Ill. 2021), where the "defendants admitted" when the full extent of the problem "became apparent" to them.

The idea that Defendants made misrepresentations about AdColony and Fyber's revenue in <u>April and May of 2021</u> to inflate the value of Digital Turbine's stock in advance of the Fyber acquisition presupposes that Defendants knew or should have known at that time that the use of principal-gross revenue recognition by the companies was improper.   Plaintiffs have not pleaded any particularized facts to show that this is true—which is why the Court granted Defendants' prior motion.   The Court rejected the allegation that AdColony's pre-acquisition revenue recognition policy shows the company used agent-net revenue recognition prior to the acquisition and Digital Turbine improperly changed the policy.   Dkt. 53 at 21–22.   The Court also held that the existence of the AdColony policy and any supposed differences between AdColony and Fyber's financials were not red flags that established severe recklessness.   *Id.* at 22–23.   The SAC does not allege any new facts on these issues.   *Compare* Dkt. 38 at ¶ 16 *with* Dkt. 56 at ¶ 16.   The factual premise of the motive allegation cannot support the scienter inference that Plaintiffs try to draw.

*Third*, Plaintiffs' allegations are illogical.   If Plaintiffs are correct that Defendants knew that Fyber overstated its revenue prior to the date the acquisition closed, then that means Digital Turbine knew it was overpaying for Fyber and closed the deal anyway.   *See* Dkt. 64 at 20.   It does not make financial sense for a buyer to behave that way—let alone perpetuate a fraud to overpay for a target.   A motive that "defies common sense" does not "give rise to a strong inference of fraud."   *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 643 (N.D. Tex. 1999).

**B.      The SAC does not raise a strong inference of intent to deceive or severe recklessness.**

Without a plausible motive, Plaintiffs must show scienter "by the more difficult method of 'identifying circumstances that indicate conscious behavior on the part of the defendant.'" *Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 747 (S.D. Tex. 2001) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).   Plaintiffs' shotgun pleading is not up to

6

this task.  Individually, Plaintiffs' arguments lack factual and legal support.  Altogether, the SAC's allegations are nothing more than fraud by hindsight.

> **1.       The circumstances of the restatements do not raise a strong inference of scienter.**

Plaintiffs prefer to focus on magnitude alone, but the Court can consider "the number, size, timing, nature, frequency, and context" of a restatement to evaluate scienter.  Dkt. 53 at 23 (quoting *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 721 (W.D. Tex. 2010)).  Nothing in the SAC should change the Court's prior ruling that the facts and circumstances of Digital Turbine's restatements weigh against scienter.

*First*, the nature of the error weighs against scienter.  The Court previously held that the decision of whether to use principal-gross or agent-net accounting is subjective and requires a "comprehensive, contract-by-contract review."  Dkt. 53 at 24 (citing FASB guidelines).  This is significant because an inference of scienter is "more likely when a statement violates an objective rule than when GAAP permits a range of acceptable outcomes."  *Owens v. Jastrow*, 789 F.3d 529, 543 (5th Cir. 2015).  Plaintiffs offer a particularly tortured reading of Fifth Circuit law and claim that the Court cannot find that the nature of the error weighs against scienter.[6]  Dkt. 64 at 33–34. Plaintiffs are simply wrong, as shown by Fifth Circuit cases where courts consider whether the accounting method involved in a restatement raises an inference of scienter (or not).  *See, e.g.*, *In re ArthroCare*, 726 F. Supp. 2d at 722 (holding that "the relative simplicity of the [accounting] issues involved" in a restatement case weighed in favor of scienter); *In re Dell Inc., Sec. Litig.*,

---

[6] Plaintiffs blatantly misrepresent the Fifth Circuit's decision in *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005).  There was no restatement in *Barrie*.  The plaintiffs questioned whether, under the applicable accounting rules, the company correctly recognized its revenue and presented an expert opinion on that issue.  *Id.* at 256–57.  The Fifth Circuit held that the question of whether the company improperly recognized revenue was "fact-based" and could not be determined on a motion to dismiss.  *Id.* at 257.

591 F. Supp. 2d 877, 902 (W.D. Tex. 2008) ("A restatement may add significant weight to the scienter calculus based on . . . the simplicity of the violated accounting principles."

The complex and subjective nature of principal-gross versus agent-net accounting is further illustrated by the fact that two outside accounting firms failed to identify the issue in AdColony and Fyber's financials prior to their acquisition by Digital Turbine.  *See* Dkt. 53 at 24.  Plaintiffs argue in response that a Big 4 firm did not "bless" Digital Turbine's decision to record revenue from AdColony and Fyber on a gross basis and "many false statements alleged here were unaudited."  Dkt. 64 at 33.  But Defendants never argued that a Big 4 firm told Digital Turbine that it properly recorded revenue from the acquired companies or claimed that Digital Turbine's press releases and earnings statements were audited.  Defendants have consistently argued that the fact that two separate auditors signed off on AdColony and Fyber's pre-acquisition financial statements calls into question Plaintiffs' claim that Defendants knew or must have known about preexisting revenue recognition issues.  Nothing in the Opposition challenges this point.[7]

*Second*, the timing and frequency of the error weighs against scienter.  Fifth Circuit courts have found that "numerous and frequent" accounting errors can raise an inference of scienter.  *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 784 (S.D. Tex. 2012).  In contrast, the error in this case was limited to the first three quarters of 2022.  Digital Turbine also took prompt action to correct the issue and file its restated financials, which weighs against scienter.  Dkt. 53 at 25 (citing *Barrie*, 397 F.3d at 264, in which the court held that the defendants' persistence in the incorrect accounting after it was brought to their attention supported a strong inference of scienter).

---

[7] Plaintiffs resort to quibbling about whether the auditors were "Big 4 firms."  Dkt. 64 at 32 n.26. This is a distinction without a difference.  Relying on an audit conducted by a non-Big 4 firm is not grossly negligent.  Plaintiffs also ignore Defendants' response to the SAC's claims about Fyber's auditor.  *See* Dkt. 60 at 28 n.11.

8

*Third*, the context of the error and subsequent restatements weighs against scienter because there was no impact on Digital Turbine's bottom-line financial results in any quarter. Fifth Circuit courts have held that these types of adjustments do not contribute to an inference of scienter.[8] In response, Plaintiffs cite a case that only proves Defendants' argument, *Norfolk County Retirement System v. Ustian*, No. 07C7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009). The court in *Norfolk* held that the "overall impact" of the accounting errors raised an inference of scienter where the errors "amounted to billions of dollars and affected all but one line item on Navistar's financial statements for three years." *Id.* at *10. The *Norfolk* court concluded that the overall financial impact and the duration of the accounting errors was more important than the fact that the errors "did not consistently overstate income." *Id.* This Court should follow the same reasoning.

### 2. Publicly available information about Fyber does not raise a strong inference of scienter.

The SAC alleges that Defendants "omitted" or "concealed" information about Fyber from Defendants' public statements and the Opposition claims that this shows "cherry picking." Dkt. 64 at 24-25. But what Plaintiffs frame as an "omission" of Fyber's public statement about net revenue is not the type of omission that the authority cited in the Opposition found to raise an inference of scienter.[9] The Opposition also ignores Defendants' argument that the Digital Turbine

---

[8] *See, e.g.*, *In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-CV-3342, 2006 U.S. Dist. LEXIS 1425, at *8 (S.D. Tex. Jan. 10, 2006) (finding no inference of scienter based on a restatement where the accounting errors "did not disguise a failing company or turn an ostensible profit into a loss"). Plaintiffs again attempt to distinguish this case based on the size of the restatement, *see* Dkt. 64 at 35 n.32, and again miss the point—the decision stands for the proposition that the financial significance of the correction, and not simply the size of the error, is important for the Court's scienter analysis.

[9] The court in the *Urban Outfitters* case found it significant that an executive omitted negative non-public information about his company in his responses to analyst questions. *See In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015). The case does not support Plaintiffs' claim that the "omission" of information published by a different company can support an inference of scienter. The "cherry picking" case cited by Plaintiffs is about brokers "picking

statements in question were made prior to the restatements when the Company reported its revenue on a principal-gross basis, and thus focusing on gross revenue figures was appropriate. Altogether, Plaintiffs allege no more than fraud by hindsight—that because Digital Turbine restated its financials to report revenue on an agent-net basis, the Company's prior public statements that did not discuss net revenue must reveal fraudulent intent. This is impermissible.[10]

### 3.    Investor presentations do not raise a strong inference of scienter.

The Opposition argues that Defendant Stone's remarks at investor presentations about Digital Turbine's competitors and about Uber Eats shows that he had actual knowledge that Digital Turbine was an agent in its transactions. Dkt. 64 at 19–21. With respect to the statements about competitors, the Opposition concedes that all three companies explained in their SEC filings that the issue involves significant judgment. Dkt. 60 at 26. Regarding Stone's comparison of Digital Turbine to Uber Eats, it is not reasonable to infer that Stone was comparing the revenue recognition policies of the two companies. Indeed, none of Stone's comments cited at the investor presentations are in the context of revenue recognition, or even accounting. The Court is not required to accept Plaintiffs' "unwarranted deductions" as well-pleaded facts and assume them to be true. *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019).

---

certain accounts over others" to disproportionately allocate profitable trades. *See SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 463 (5th Cir. 2022). The remainder of the authority cited by Plaintiffs is about premature revenue recognition and does not apply. Dkt. 64 at 25–26.

[10] Plaintiffs also include a series of barely comprehensible paragraphs that claim Defendants made a conscious decision to misrepresent gross revenue. Dkt. 64 at 26–27. All Plaintiffs have done is cite the paragraphs in the SAC that describe misstated revenue and then quote from Digital Turbine's announcement of the restatements, in which it said that its revenue was reported on a gross basis but should have been reported on a net basis. ¶ 71. Plaintiffs' claim that the fact of the restatements shows "conscious misbehavior" is another instance of fraud by hindsight

### 4. The CAO allegations do not raise a strong inference of scienter.

The Opposition's framing of the Chief Accounting Officer allegations lays bare the absurdity of the SAC. The Opposition claims that non-defendant Mike Miller was brought on as CAO to clean up Defendants' fraud and that his hiring shows Defendants knew about the internal control and revenue recognition issues prior to August 2021. Dkt. 64 at 30, n.21. But that begs the question of why Defendants would bring in Miller at all if they were deceiving investors? Why not keep former CAO Wesch, whom Plaintiffs say "lied about being a CPA." Dkt. 64 at 31. And if Miller was brought in to "fix" the fraud, how do Plaintiffs explain the ten month gap between his hiring and the restatements? Once again, Plaintiffs cannot have it both ways—Miller cannot be both the champion of compliance and a lackey who ignored a fraud for months.

### 5. The SAC does not allege a duty to monitor.

In their opposition brief to the prior motion to dismiss, Plaintiffs argued the core operations doctrine that was not alleged in the complaint. Dkt. 53 at 25 n.11. This time around, Plaintiffs' make an argument about a "duty to monitor" that was not alleged in the SAC. Dkt. 64 at 30-32. The Court can reject the argument because it is not properly raised. *Davis v. DRRF Tr. 2015-1*, No. 5:15-CV-880 RP, 2016 WL 8257126, at *3 (W.D. Tex. Jan. 6, 2016).

The argument also fails on the merits. A securities fraud complaint can state a claim based on recklessness where plaintiffs allege facts "demonstrating that defendants failed to review or check information that they had a duty to monitor." *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, No. CIVA503MD1530TJW, 2004 WL 5278716, at *10 (E.D. Tex. June 16, 2004). The Opposition does not identify a specific source of information that Defendants had a duty to monitor, and therefore the argument fails. *See, e.g.*, *Patel v. L-3 Commc'ns Holdings Inc.*, 14-cv-6038, 2016 WL 1629325, at *10 (S.D.N.Y. Apr. 21, 2016) (duty to monitor whistleblower call reports).

11

6.      **Analyst estimates do not raise an inference of scienter.**

The Opposition claims that the Court can find an inference of scienter because the accounting errors allowed Digital Turbine to meet analyst estimates, and cite two cases from outside the Fifth Circuit. Dkt. 64 at 36. Even assuming that courts in the Fifth Circuit would credit this theory of scienter, it does not apply here. In one of Plaintiffs' cited cases, the accounting violations "made the difference between failure and success in meeting the annual revenue guidance." *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017). In the other, an outside auditor allegedly ignored its client's recognition of material amounts of revenue at the end of each quarter "just in time" to meet earnings targets. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004). Here, the SAC alleges that Digital Turbine outperformed analyst estimates—it was not struggling to meet them. ¶¶ 55–56.

C.      **The opposing inferences in Defendants' favor are overwhelming.**

The haphazard additions to the SAC have not fundamentally changed Plaintiffs' theory of fraud or made it any more plausible. As alleged by Plaintiffs, Digital Turbine's CEO and CFO changed AdColony's revenue recognition practices post-acquisition to fraudulently inflate Digital Turbine's revenue figures, knowingly overpaid to acquire Fyber, held onto millions of shares of Digital Turbine stock instead of selling to take advantage of the fraud, and then hired a new Chief Accounting Officer and third-party accounting firm to uncover their obvious accounting scheme. Once discovered, Stone and Garrison caused Digital Turbine to immediately disclose the accounting errors, leading their personal stock holdings to decrease in value by millions of dollars when the market reacted to the restatements. Viewed holistically, the scienter allegations remain absurd. *See Reiger v. Pricewaterhousecoopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) (highlighting the plaintiffs' failure to explain why a defendant would "deliberately ignore improperly recognized revenues" only to "recommend a restatement" just months later).

12

The more compelling inferences are in Defendants' favor: Digital Turbine maintained AdColony and Fyber's pre-acquisition revenue recognition practices and acted in reliance on their audited financial statements; conducted a preliminary review of the companies' revenue recognition that did not reveal any obvious issues; later hired a third-party accounting firm to conduct a more in-depth, comprehensive review; and then self-reported and corrected the issues identified by the outside accountant.

## II.    Plaintiffs do not allege that Stone's February 8, 2022 statements were materially false or misleading.

The Court can dismiss statements made by Defendant Stone during a February 8, 2022 earnings call because they are corporate puffery, which is immaterial as a matter of law. Corporate puffery consists of "vague expressions of optimism rather than specific facts." *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir. 2019).

Paragraph 193 of the SAC quotes a statement from Stone saying that AdColony "had a really nice quarter" and Digital Turbine was "really proud of the rebound in performance there" and saw "really nice growth there, across the board." These are not specific facts—there is no discussion of any financial metrics, only of Digital Turbine's optimism regarding the results. Plaintiffs apparently agree, because they do not discuss these statements in the Opposition.

## III.    The SAC does not sufficiently allege loss causation as to the May 31, 2022 disclosure.

The May 31, 2022 announcement of Digital Turbine's financial results for the fourth quarter of 2022 is not a corrective disclosure because it does not reveal any new information about the restatements. On May 31, 2022, the market was already aware of the restatements and their impact on Digital Turbine's financial results because Digital Turbine announced that information to the market on May 17, 2022. ¶ 249. Nor is there a connection between the statements that Plaintiffs allege to be false—namely, Digital Turbine's financial results for the periods ending

13

June 30, September 30, or December 31, 2021—and the subject of the May 31, 2022 announcement, which is Digital Turbine's results for the period ending March 31, 2022.

The Opposition claims that the May 31 disclosure "revealed, for the first time, the full extent of the revenue recognition issues." Nonsense. The restatements revealed the full extent of the revenue recognition issues. To the extent that the May 31, 2022 announcement concerned financial results that also use the correct accounting method, that information is confirmatory. *See Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008).

### IV.   Plaintiffs do not allege scheme liability.

Plaintiffs' last-ditch attempt to save their claims from dismissal is to argue that Defendants have "conceded" scheme liability under Rule 10b-5(a) and (c). The Court can easily reject Plaintiffs' argument.

*First*, scienter is an element of a claim under Rule 10b-5(a) and (c). *United States SEC v. Silea*, No. 4:20-CV-737-SDJ, 2022 U.S. Dist. LEXIS 15101, at *33 (E.D. Tex. Jan. 27, 2022). The Opposition does not identify any scienter allegations that apply solely to the scheme claim. If Plaintiffs failed to allege scienter for the Rule 10b-5(b) claim, then any scheme claim necessarily fails as well.

*Second*, Plaintiffs' conduct in this litigation contradicts their eleventh-hour assertions. Plaintiffs did not claim that Defendants conceded a scheme claim in their prior opposition brief even though all of the paragraphs that Plaintiffs now cite as evidence of the claim were present in the prior complaint and have not changed by even one word. *See* Supplemental Declaration of Michael J. Biles, Exhibit 28 (redline of the SAC against the prior complaint).

*Third*, the Court should not allow this case to move forward into time-consuming and expensive discovery based on Plaintiffs' waiver arguments. In the same situation, a district court in Florida held that it was proper to address the reply brief's arguments because plaintiff's

14

discussion of scheme liability was "unexpected." *In re Tupperware Brands Corp. Sec. Litig.*, No. 6:20-cv-357-Orl-31GJK, 2021 U.S. Dist. LEXIS 13632, at *12 (M.D. Fla. Jan. 25, 2021). Analyzing the arguments, the court concluded that the allegations of the complaint did not state a scheme to defraud. *Id.* at *13–14. The same is true here.

*Fourth*, the Court should not endorse Plaintiffs' desperate maneuver based on citation to a handful of paragraphs in the SAC that merely parrot the language of the regulation without alleging any specific facts. Every use of the term "scheme" in the SAC is in boilerplate paragraphs that do not describe the "scheme" with any particularity or identify any specific actions taken by Defendants in furtherance of the scheme. *See* ¶¶ 202, 203, 245, 260(d), 271, 272. The complaint in *Andarko*, a case cited in Plaintiffs' opposition brief, is instructive on this point. *See* Biles Decl., Ex. 29 (*Andarko* complaint).

The first section of the *Andarko* complaint was entitled "Defendants' Fraudulent Scheme" and contained more than 60 paragraphs outlining how the defendants allegedly undertook a campaign to suppress information that contradicted their public statements by retaliating against employees who presented contrary views to management and by manipulating data and falsifying internal documents. *See* Ex. 29 at ¶¶ 29–91. The court held that the plaintiff "clearly" alleged a scheme to defraud and cited specific factual allegations about the defendants' actions. *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 951 (S.D. Tex. 2021). There are no scheme allegations in the SAC that even approach the particularized factual allegations presented in *Andarko*. The Court can therefore hold that Plaintiffs fail to allege a scheme claim with particularity.

## CONCLUSION

For the reasons stated herein, the Court should dismiss the SAC with prejudice.

15

Dated: November 13, 2023

Respectfully submitted,

*/s/ Michael J. Biles*

**KING & SPALDING LLP**
Paul R. Bessette, Texas Bar No. 02263050
Michael J. Biles, Texas Bar No. 24008578
Frances R. Fink, Texas Bar No. 24135291
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
Email: pbessette@kslaw.com
Email: mbiles@kslaw.com
Email: ffink@kslaw.com

*Counsel for Defendants Digital Turbine, Inc.,*
*William Stone, and Barrett Garrison*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, November 13, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Michael J. Biles
Michael J. Biles